Jacques Louis BACHELIER, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 78–3351.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1980.

Decided Aug. 20, 1980.

. . . ."

Jeff T. Appleman, San Francisco, Cal. (argued), Park & Litwin, San Francisco, Cal., on brief, for petitioner.

Lauri S. Filupp, Dept. of Justice, Washington, D.C., for respondent; Daniel E. Fromstein, James P. Morris, Washington, D.C., on brief.

Before BROWNING and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.

GOODWIN, Circuit Judge.

Jacques Louis Bachelier appeals from a final order of deportation. He also seeks review of the rescission in 1974 of his permanent resident status, one result of which was the deportation order presently before us.[1]

Bachelier, a native and citizen of France, entered the United States as a nonimmigrant for pleasure on October 12, 1970. On April 5, 1971, he married an American citizen and applied for and received adjustment to permanent resident status pursuant to Section 201 of the Immigration and Nationality Act, 8 U.S.C. § 1151.

In 1974, the immigration service challenged Bachelier's status. The government and Bachelier presented evidence. The immigration judge determined that Bachelier's marriage was "a sham" and that he was not entitled to immediate relative status. Accordingly, in due course the attorney general rescinded Bachelier's adjustment to permanent resident status. *See* 8 U.S.C. § 1256.[2] Bachelier appealed to the Board of Immigration Appeals, and on May 12, 1975, the Board dismissed the appeal.

A year later, Bachelier filed a motion to reopen the rescission proceeding, claiming

---

* The Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

1. When Bachelier's permanent resident status was rescinded, he became immediately subject to deportation. Bachelier raises no challenge to the deportation order apart from his attack on the order of rescission.

2. 8 U.S.C. § 1256 provides in pertinent part: "(a) . . . If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made."

that he had new evidence. The Board denied this motion. Bachelier appealed the denial of his motion to reopen to the United States Court of Appeals for the Fifth Circuit. That court held that it did not have jurisdiction to review the denial of a motion to reopen. The court pointed out that "in immigration matters direct review in the court of appeals is limited to final deportation orders . . . ." *Bachelier v. Immigration and Naturalization Serv.*, 548 F.2d 1157, 1158 (5th Cir. 1977).

The Service filed an order to show cause why Bachelier should not be deported. After hearings in July 1977, an immigration judge ordered Bachelier deported to France, and denied his request for voluntary departure. Bachelier again appealed to the Board of Immigration Appeals. On September 12, 1978, the Board dismissed that appeal. Bachelier now appeals to this court pursuant to § 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a).[3]

Section 1105a(a) confers jurisdiction to review the final order of deportation, but in this appeal Bachelier again seeks to test the validity of his 1974 rescission proceeding.

The Supreme Court held in *Cheng Fan Kowk v. Immigration Serv.*, 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968), that "the judicial review provisions of § 106(a) embrace only those determinations made during a proceeding conducted under § 242(b) . . . ." (8 U.S.C. § 1252(b).) The Court left open "the possibility that a court of appeals might have 'pendent jurisdiction' over denials of discretionary relief, where it already has before it a petition for review from a proceeding conducted under § 242(b) . . . ." *Id.* n. 16.

We need not decide whether this court has jurisdiction to review the rescission as a separate question. Compare *Bark v. Immigration and Naturalization Service*, 511 F.2d 1200 (9th Cir. 1975), (court assumed jurisdiction), with *Bachelier v. Immigration and Naturalization Serv., supra.*

In *Waziri v. United States Immigration and Nat. Serv.*, 392 F.2d 55 (9th Cir. 1968), decided before *Cheng Fan Kwok*, we held that our power to review a final deportation order of the Board of Immigration Appeals under § 1105a(a) carries with it the power to examine the validity of the rescission order that lies at the base of the deportation order. Otherwise, where the final order entirely depends upon the rescission of status, as in this case, our review of the deportation order would be meaningless.[4] We find nothing in *Cheng Fan Kwok* to overrule *Waziri.*

We have reviewed the 1974 rescission order and find it free from fatal defect. Bachelier claims the immigration judge's reliance on certain affidavits denied Bachelier a reasonable opportunity to cross examine witnesses, in violation of 8 U.S.C. § 1252(b)(3), and denied him due process. These claims are groundless.

The rescission hearing was held in San Francisco and the witnesses were in Omaha, Nebraska, where the allegedly sham marriage took place. The government notified Bachelier in advance that it would use the affidavits. The government did not attempt to bring the affiants to San Francisco, but it offered to transfer the hearings to Omaha, and the immigration judge offered to let Bachelier's attorney go to Omaha to take oral depositions or send written interrogatories. These offers gave Bachelier a reasonable opportunity to cross examine the affiants. Use of the affidavits was not fundamentally unfair. *See Martin-Mendo-*

---

**3.** 8 U.S.C. § 1105a(a) provides in pertinent part:
"(a) The procedure prescribed by, and all the provisions of sections [2342 to 2350 of Title 28] shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or

comparable provisions of any prior Act,
. . . ."

**4.** *Cf. Menezes v. Immigration and Naturalization Service*, 601 F.2d 1028 (9th Cir. 1979). In *Menezes*, this court reviewed a denial of adjustment to permanent resident status where the denial occurred during a final deportation hearing.

*za v. Immigration and Naturalization Service*, 499 F.2d 918, 921 (9th Cir. 1974); *Marlowe v. United States Immigration and Naturalization Service*, 457 F.2d 1314 (9th Cir. 1972).

Bachelier next contends that the refusal of voluntary departure was an abuse of discretion. Section 244(e) of the Act, 8 U.S.C. § 1254(e), authorizes the Attorney General, in his discretion, to permit any alien under deportation proceedings (with enumerated exceptions):

> "(e) . . . to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection."

Section 101(f)(6) of the Act, 8 U.S.C. § 1101(f)(6) states that "[n]o person shall be regarded as . . . a person of good moral character who [gave] false testimony for the purpose of obtaining any benefits under this chapter."

At the deportation proceeding, the immigration judge found that Bachelier gave false testimony when his permanent resident status was rescinded and that as a consequence he was not entitled to voluntary departure. This finding is supported by the record before the immigration judge. It therefore follows that there was no abuse of discretion.

Affirmed.