**Majid GHORBANI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 80–7509.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1981.

Decided Sept. 8, 1982.

Robert D. Baizer, Younemura & Yasaki, Oakland, Cal., for petitioner.

Lawrence Lippe, Washington, D. C., argued, for respondent; Jimmy Gurule, Atty., Washington, D. C., on brief.

Before CHOY, HUG and POOLE, Circuit Judges.

HUG, Circuit Judge:

Majid Ghorbani, a native and citizen of Iran, petitions for review of a decision of the Board of Immigration Appeals ("BIA"). The BIA dismissed Ghorbani's appeal from an immigration judge's decision that Ghorbani was deportable as a nonimmigrant student in violation of the conditions of his status. Ghorbani raises several issues: (1) that his violations were "technical" and "not substantial" and therefore did not justify deportation; and (2) that the District Director abused his discretion in refusing to reinstate Ghorbani's student status, and the immigration judge and the BIA erred in holding that the immigration judge had no authority to review that decision; and (3) that this court has jurisdiction to review the discretionary decision of the District Director even though it was not reviewed in the deportation hearing. We affirm the decision of the BIA and hold that this court lacks jurisdiction to review the discretionary decision of the District Director.

I

Ghorbani entered the United States as a nonimmigrant student in August, 1978, and

was subsequently authorized to remain in this country for the duration of his student status. In November, 1979, Ghorbani reported to the INS office in Reno pursuant to a Presidential Proclamation and INS regulation. It was discovered then that he had transferred from Lassen Community College to Sierra Nevada College without first receiving INS permission, in violation of 8 C.F.R. § 214.2(f)(4)(1982).[1] It also was discovered at this time that Ghorbani had been employed part-time without INS permission, in violation of 8 C.F.R. § 214.-2(f)(6)(1982).[2] A show cause order was issued shortly thereafter. Prior to the hearing before the immigration judge, Ghorbani applied to the District Director for reinstatement of his student status. That application was denied. The immigration judge found Ghorbani deportable as a nonimmigrant student in violation of his status. Ghorbani's appeal to the BIA was denied and Ghorbani then filed a petition for review in this court.

## II

Ghorbani admits the violation of the regulations but argues that his deportation is unjustified because his violations of status were "technical" and "not substantial." He cites *Mashi v. INS*, 585 F.2d 1309 (5th Cir.

1. The regulation provides that:
   [a] student shall not be eligible to transfer to another school unless he submits a valid Form I–20 completed by that school and the Service grants him permission to transfer. Application for transfer shall be made on Form I–538 and shall be filed in the Service office having jurisdiction over the school which he was last authorized by the Service to attend; however, if the student has failed to commence or continue full-time attendance at such school, he may instead file the application in the Service office having jurisdiction over the school to which he wishes to transfer. Permission to transfer may be granted only if the applicant establishes that he is a bona fide nonimmigrant student, that he intends to take a full course of study at the school to which he wishes to transfer, and that he in fact was a full-time student at the school which he was last authorized by the Service to attend, unless failure to commence or continue full-time attendance was due to circumstances beyond his control or was otherwise justified. The name of the school to which transfer is authorized shall be endorsed on the student's Form I–94.

2. The regulation provides that:
   [a] nonimmigrant who has a classification under section 101(a)(15)(F)(i) of the Act is not permitted to engage in off-campus employment in the United States, either for an employer or independently, unless all of the following conditions are met: (i) The student is in good standing as a student who is carrying a full course of studies as defined in paragraph (f)(1a) of this section; (ii) the student has demonstrated economic necessity due to unforeseen circumstances arising subsequent to entry or subsequent to change to student classification; (iii) the student has demonstrated that acceptance of employment will not interfere with his/her carrying a full course of study; (iv) the student has agreed that employment while school is in session will not exceed 20 hours per week; and (v) the student has submitted to an authorized official of a school approved by the Attorney General a form I–538, and this form has been certified by that official that all the aforementioned requirements have been met. The authorized official of the school will submit the certified form I–538 containing his recommendation together with the student's form I–94 to the Service office which has jurisdiction over the place where the school is located. The student has permission to accept employment when he/she receives the form I–94 endorsed by the Service to that effect. Permission granted under this paragraph allows a student to work full time when the school is not in session, including the summer if the student is eligible and intends to register for the next following term. On-campus employment pursuant to the terms of a scholarship, fellowship, or assistantship is deemed to be part of the academic program of a student otherwise taking a full course of study, if related thereto. A student who is offered this kind of on-campus employment, or any other on-campus employment which will not displace a United States resident, does not require Service permission to be engaged in such employment. Permission which is granted to a student to engage in any employment shall not extend beyond the date of his/her authorized stay and authorization for all employment, whether or not part of any academic program, is automatically suspended upon certification by the Secretary of Labor or his designee to the Commissioner of Immigration and Naturalization or his designee that a strike or other labor dispute involving a work stoppage of workers is in progress in the occupation at the place of employment. As used in this section, "place of employment" shall mean wherever the employer or a joint employer does business.

**786**

1978) for the proposition that it was not the intent of Congress to subject nonimmigrant students to deportation for minor violations of status. The *Mashi* decision does not stand for that proposition. In that case the BIA had found an Iranian student deportable for failure to comply with his nonimmigrant student status. Mashi had enrolled for fourteen credit hours in the school he had been authorized to attend. However, because he unavoidably missed six classes and an exam, he dropped a four credit physics course on the advice of his physics professor. The Board found that he had failed to pursue a full course of study and had lost his student status because he completed only ten credits for the semester. The Board, however, was erroneously applying a regulation that required a student to take a twelve hour schedule to maintain student status. That regulation was, by its own terms, inapplicable to Mashi because he had been admitted prior to its effective date. Although there is language in the opinion that the INS should look at each case on its own facts and strike "a fair balance between the character of the act committed and the consequences which will flow from it," *id.* at 1317, the actual holding of the case is that the BIA cannot deport a student for failure to comply with regulations that were inapplicable to him.

We need not decide in this case whether there could be circumstances when a violation would be so technical as not to justify deportation. In this case, Ghorbani violated two specific and significant regulations. First, he failed to secure advance approval before transferring to a different college, a violation of 8 C.F.R. § 214.2(f)(4)(1982). This advance approval has been identified by the INS as an essential tool, the lax enforcement of which would severely hamper its obligation to keep track of the thousands of alien students within our borders. *Matter of Yazdani*, 17 I&N Dec. 626 (BIA 1981).

Furthermore, Ghorbani was employed without securing advance INS permission, a violation of 8 C.F.R. § 214.2(f)(6)(1982). In *Tashnizi v. INS*, 585 F.2d 781 (5th Cir. 1978), the same panel that four days later decided *Mashi*, held in a per curiam opinion that a violation of 8 C.F.R. § 214.2(f)(6) (employment without INS permission) was in itself sufficient to justify deportation of a nonimmigrant student.

We agree with the *Tashnizi* court's conclusion that engaging in unauthorized employment is not a technical or insubstantial violation of status. Nonimmigrant students are admitted to the United States for the limited purpose of pursuing the educational opportunities available here. Engaging in off-campus employment may often be inconsistent with this purpose. The INS forms that the alien receives clearly indicate that a nonimmigrant student is not to engage in employment without prior INS approval.

Ghorbani asserts that because his funds were cut off as a result of the revolution in Iran, the INS would have granted him permission to work had he requested it. Thus, he argues, he should not be penalized now for having failed to obtain prior approval. After the fact justification does not excuse his failure to comply with INS prior approval regulations, of which he had clear notice. To rule otherwise would create an incentive to work without permission and to present the justification only if discovered. We conclude, as did the immigration judge and the BIA, that Ghorbani violated important regulations governing his nonimmigrant student status, which constituted a failure to maintain status and, therefore, resulted in deportability under section 241(a)(9), 8 U.S.C. § 1251(a)(9).

## III

The second and third issues raised by Ghorbani present difficult jurisdictional questions concerning section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a). Ghorbani acknowledges that his transfer to another college and his employment, both without prior INS permission, were violations of the regulations. He contends, however, that the District Director's refusal to reinstate his student status was an abuse of discretion in two ways.

He claims that the District Director improperly failed to apply the guidelines of INS Operating Instructions and the Immigrant Inspector's Handbook in considering reinstatement of his status.[3] He also claims that the District Director discriminated against him because he is an Iranian. He sought to introduce evidence in the deportation hearing concerning these matters.

The immigration judge held he had no authority to review the discretionary decisions of the District Director, and refused to permit evidence on these claims. The BIA, on appeal, held that neither the immigration judge nor the BIA had authority to review the discretionary decision of the District Director.

There is no doubt that the deportation hearing was affected by the decision of the District Director not to reinstate Ghorbani's nonimmigrant student status. Had the District Director reinstated his student status, he would not have been deportable. The

inquiry is whether this decision must be reviewed by the immigration judge in the deportation hearing, and if it is not reviewed, whether this court has jurisdiction to review it on appeal.

This court's jurisdiction to review the decision of the District Director is based solely upon section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a).[4] Section 106(a) provides that courts of appeal have sole and exclusive jurisdiction to review "all final orders of deportation ... made ... pursuant to administrative proceedings under section [242(b) 8 U.S.C.] 1252(b) ...." The extent of the jurisdiction conferred by this phrase is the focus of our inquiry.[5]

The section 242(b) proceedings, referred to in section 106(a), are those proceedings conducted by a special inquiry officer (now known as an immigration judge)[6] for determining whether an alien may be deported. Section 242(b) provides for detailed admin-

---

**3.** Petitioner cites in particular Operating Instruction 242.1(a)(21) and a statement on page 9–15 of the Immigrant Inspector's Handbook. OI 242.1a(21) states:

> When a deportable alien is located who is seeking to pursue, continuing in pursuit of, or is enrolled in, a course of academic study at an approved institution of learning, his case shall be handled in the same manner as the case of a B–1 or B–2 nonimmigrant in a similar situation, taking into consideration all the factors, including whether the violation was witting or excusable, his progress in academic study and financial position.

The statement on page 9–15 of the Handbook relied upon is:

> If there has been a technical or nonwillful violation of status or if the period of authorized stay has expired and failure to file a timely application was reasonably excusable, the applicant may be restored to status and granted an extension of stay....

The present regulations specifically deal with reinstatement of student status at 8 C.F.R. 214.2(f)(8) (1982); however, this regulation was not in effect at the time of the District Director's decision in this case.

**4.** Section 106(a) provides in pertinent part:

> The procedure prescribed by, and all the provisions of sections 1031 to 1042 of Title 5, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative pro-

ceedings under section 1252(b) of this title or comparable provisions of any prior Act, except that—

> (4) ... the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive;

Sections 1031 to 1042 of Title 5 referred to are the procedures enacted for judicial review of orders of federal agencies in the Hobbs Act, now codified as amended at 28 U.S.C. §§ 2341–2353. The exception 4, above quoted, precludes application of the procedures of the Hobbs Act that permit transfer of a case to a district court for a hearing, under circumstances set forth at 28 U.S.C. § 2347(b)(3). Were that section of the Hobbs Act available to us it would appear to be appropriate in this case.

**5.** In situations where the appellate jurisdiction of section 106(a) is not applicable, the alien's first recourse would lie in an action brought in the appropriate district court. *Cheng Fan Kwok v. INS*, 392 U.S. 206, 210, 88 S.Ct. 1970, 1973, 20 L.Ed.2d 1037 (1968). *See* n.16, *infra*.

**6.** 8 C.F.R. 1.1(l) (1982) provides:

> The term "immigration judge" means special inquiry officer and may be used interchangeably with the term special inquiry officer wherever it appears in this chapter.

istrative procedures that assure the alien of rights to counsel, to present evidence, and to cross examine witnesses. The statute also authorizes the Attorney General to grant certain forms of discretionary relief as a part of a section 242(b) proceeding. Any deportation order must be based upon the record developed in that proceeding.

The Supreme Court has spoken three times on the extent of the jurisdiction conferred by section 106(a) to review section 242(b) deportation orders. The first was in *Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). The Court there held that the jurisdiction of the courts of appeals was not limited solely to the bare determination of deportability, but extended also to a review of the final administrative orders with respect to the discretionary relief sought during the deportation hearing. *Id.* at 220–21, 84 S.Ct. at 309. In the second case, *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), the Court held in a brief per curiam opinion that section 106(a) jurisdiction extended to the review of motions to reopen deportation proceedings.

Any signal these cases may have given that section 106(a) jurisdiction would be expansively interpreted was quashed when the Supreme Court decided *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). In *Cheng Fan Kwok*, the INS had argued that all determinations directly affecting the execution of the basic deportation order, whether made prior to, during, or subsequent to the deportation proceeding, should be included for direct review under section 106(a). *Id.* at 210, 88 S.Ct. at 1973. The Court explicitly rejected this interpretation. The petitioner in

*Cheng Fan Kwok* had been found deportable in a section 242(b) hearing and had been granted permission to depart voluntarily. He did not do so and was ordered to surrender for deportation. He requested a stay of deportation from a District Director pending submission and disposition of a petition for adjustment in status. The District Director concluded he was ineligible for the relief requested and denied the stay of deportation.

The holding on the facts in *Cheng Fan Kwok* is that the court of appeals did not have jurisdiction under section 106(a) to review the District Director's denial of discretionary relief, which occurred after the 242(b) hearing. However, the language of that holding would indicate a generally narrow construction of the jurisdictional grant. The Court stated:

> We hold that the judicial review provisions of § 106(a) embrace only those determinations made during a proceeding conducted under § 242(b), including those determinations made incident to a motion to reopen such proceedings.[16]

*Id.* at 216, 88 S.Ct. at 1976[7] (footnote 16 reference in original text). Footnote 16 of *Cheng Fan Kwok* states:

> We intimate no views on the possibility that a court of appeals might have "pendent jurisdiction" over denials of discretionary relief, where it already has before it a petition for review from a proceeding conducted under § 242(b). See *Foti v. Immigration Service, supra* [375 U.S.] at 227, n.14 [84 S.Ct. at 313, n.14].

*Id.* at 216, 88 S.Ct. at 1976.[8]

There has been some considerable disagreement as to the extent of the possible

---

**7.** It is revealing to note that the wording chosen to express the holding is somewhat more restrictive than the wording quoted from *Foti*. The *Cheng Fan Kwok* opinion quotes the *Foti* holding as follows:

> all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals ... are ... included within the ambit of the exclusive jurisdiction of the Court of

Appeals under § 106(a). 375 U.S. at 229 [84 S.Ct. at 313].

392 U.S. at 211, 88 S.Ct. at 1973. The *Cheng Fan Kwok* opinion uses the words "determinations made during a proceeding." It drops the phrase "and incident to" the proceeding.

**8.** For a clarification of what is encompassed within "pendent jurisdiction" we are referred to *Foti*. In *Foti* the Court noted that even though the alien there had conceded deportability, that fact did not preclude review of the denial of discretionary relief requested in the

"pendent jurisdiction" in the court of appeals. *See* 2 Gordon and Rosenfeld, *Immigration Law and Procedure* § 8.9Ab, p. 8–81 n.54 (1982). There is an indication that the Court would limit "pendent jurisdiction" to situations in which quasi-judicial hearings had been conducted. *Cheng Fan Kwok*, 392 U.S. at 212–13 n.11, 215–16 & n.15, 88 S.Ct. at 1974 n.11, 1975–76 & n.15. It is the determination of what is encompassed within that "pendent jurisdiction" that makes the jurisdictional analysis difficult.

We turn to the authority in this circuit concerning the extent of jurisdiction under section 106(a), as interpreted by *Cheng Fan Kwok*. In *Yamada v. INS*, 384 F.2d 214 (9th·Cir. 1967), a case predating and noted with approval in *Cheng Fan Kwok*, the alien filed a petition with the District Director to reclassify his status after the order in the 242(b) deportation hearing had become final. We held that we lacked jurisdiction to review the decision of the District Director. We noted that the legislative history of section 106(a) indicated that Congress wished to eliminate piecemeal litigation of deportation issues, but also that Congress intended that the scope of direct appellate review be dependent to some extent upon the regulations of the INS. *Id.* at 216–18. It was acknowledged that the INS could expand the scope of appellate review under section 106(a) by including more issues for review in the section 242(b)

deportation hearings. "Congress made no effort to catalogue such issues. The administrative rule-making process is better suited to that task." *Id.* at 218.

The Supreme Court, in both *Foti* and *Cheng Fan Kwok*, recognized this, and found no difficulty in the fact that the scope of review under section 106(a) might be affected by INS regulations modifying the type of agency orders heard within a 242(b) proceeding. *See Cheng Fan Kwok*, 392 U.S. at 216, n.17, 88 S.Ct. at 1976, n.17; *Foti*, 375 U.S. at 229–30 & n.16, 84 S.Ct. at 313–14 & n.16.[9]

In two cases, one before and one after *Cheng Fan Kwok*, we have held that our jurisdiction to review a final order of deportation under section 106(a) includes the power to examine the validity of an order rescinding permanent resident status, when that order lies at the base of the deportation order. *Bachelier v. INS*, 625 F.2d 902 (9th Cir. 1980); *Waziri v. INS*, 392 F.2d 55 (9th Cir. 1968). In each of these cases there was a prior decision by an immigration judge affirmed by the BIA, that rescinded the alien's permanent resident status, thereby making him immediately subject to deportation. There had been a full quasi-judicial hearing before an immigration judge with an appeal to the BIA, as required by the regulations.[10] These are the same procedures as are involved in a section 242(b) proceeding. As previously noted, the Supreme Court gave an indication in *Cheng*

242(b) proceeding. In that context the Court, in footnote 14 (referred to in *Cheng Fan Kwok*) stated:

Because of the effect of our holding here, it is of course unnecessary to consider the Government's contention that, where deportability is actually adjudicated, a Court of Appeals has "pendent jurisdiction" to review a denial of discretionary relief in the same proceeding.

This footnote could reasonably be interpreted to mean that if discretionary relief is reviewable in a 242(b) proceeding when deportability is conceded, then, *a fortiori*, it is reviewable when deportability is adjudicated. However, the footnote 16 reference in *Cheng Fan Kwok* seems to imply something more.

9. It is significant that the Court in *Foti*, 375 U.S. at 229–30, 84 S.Ct. at 313–14, stated: "We

see nothing anomalous about the fact that a change in the administrative regulations may effectively broaden or *narrow* the scope of review available in the Courts of Appeals." (Emphasis added.) Although the Court recognized the intent of Congress to limit piecemeal litigation of deportation issues by enacting section 106(a), the Court did not find it within the congressional intent to *require* the INS to expand the issues available for review in section 242(b) proceedings. The determination of the issues to be encompassed in the section 242(b) proceedings was left to the administrative agency.

10. *See generally*, 2 Gordon and Rosenfeld, *Immigration Law and Procedure*, § 7.7f, p. 7–112 —116, concerning procedures for rescission or adjustment of status.

*Fan Kwok* that "pendent jurisdiction" could include prior quasi-judicial proceedings upon which the deportation proceeding was dependent.[11]

In *Chadha v. INS*, 634 F.2d 408 (9th Cir. 1980), *appeal pending,* 454 U.S. 812, 102 S.Ct. 87, 70 L.Ed.2d 80 (1981), we also held that "pendent jurisdiction" existed. In that case, the alien conceded deportability, but was granted discretionary relief of suspension of deportation by the immigration judge, pursuant to section 244(a)(1), 8 U.S.C. § 1254(a)(1), pending congressional action as required by section 244(c)(2), 8 U.S.C. § 1254(c)(2). The House of Representatives disapproved suspension, thus overriding the immigration judge's decision. The deportation hearing was reconvened and the final order of deportation was entered. On appeal, Chadha challenged the constitutionality of the one-house veto. This issue was not considered by the immigration judge or the BIA because they have no authority to decide the constitutionality

of the statute. *See Hernandez-Rivera v. INS*, 630 F.2d 1352, 1355 (9th Cir. 1980).

We held that jurisdiction under section 106(a) extended to the review of this legal issue. The question whether the one-house veto of a suspension of deportation is constitutional is purely a matter of law and requires no findings of fact. Thus, in resolving this issue, the lack of consideration by the immigration judge and the BIA was inconsequential.[12] In *Chadha*, the constitutionality of section 244, the very statute under which the relief was granted by the immigration judge, was an integral part of the section 242(b) proceedings.[13]

There are, thus, two areas in which we have specifically found that utilizing pendent jurisdiction is justified: when there has been a factual hearing on the issue, equivalent to that required by section 242(b), or when such a hearing is unnecessary.

Ghorbani's case presents a decision by the District Director in which there has been no

---

11. The Court stated in *Cheng Fan Kwok*, 392 U.S. at 215–16, 88 S.Ct. at 1975–76. "Possibly, as *amicus* cogently urges, Congress wished to limit petitions to the courts of appeals to situations in which quasi-judicial hearings had been conducted." A similar indication is apparent in the review of legislative history when the Court notes Congressman Walter's assurance that a judicial review under 106(a) would be based on an adequate record, noting section 242(b) procedures. *Id.* at 215, 88 S.Ct. at 1975. *See* 212–13, n.11, 88 S.Ct. at 1974, n.11, for similar indications.

12. Recently the Third Circuit, applying a more restrictive reading of *Cheng Fan Kwok*, criticized our finding of jurisdiction even in this circumstance. *See Dastmalchi v. INS*, 660 F.2d 880 (3rd Cir. 1981). A relevant analogy to the result we reached in *Chadha* is seen in a provision of the Hobbs Act, 28 U.S.C. § 2347(b)(2). Although this provision of the Hobbs Act would appear not to be incorporated by reference in section 106(a) (see footnote 4, *supra*), the reasoning employed in the section parallels that of *Chadha*. It provides that the court of appeals is required to "pass on issues presented, when a hearing is not required by law and it appears from the pleadings and affidavits filed by the parties that no genuine issue of fact is presented." It would appear to be a frustration of the congressional intent to avoid piecemeal litigation to refuse jurisdiction to review a purely legal question; even if the issue were

raised first in district court, the review in this court would be de novo.

13. Three other cases in our circuit touch upon the issue of the review of the District Director's decisions under section 106(a). None of these is inconsistent with our holding in this case. In *Doug Yup Lee v. INS*, 407 F.2d 1110 (9th Cir. 1969), after a final order in a section 242(b) hearing, we held we could not review a decision of the District Director refusing reclassification as a preference quota immigrant, although we did review a denial by the special inquiry officer of an application for permanent resident status. *Id.* at 1112.

In a brief *per curiam* opinion relating to denial of a waiver of a visa requirement, we stated in *Wei-Ming Chang v. INS*, 418 F.2d 1334, 1335 (9th Cir. 1969), "[a]ssuming *without deciding* that petitioners may question in a deportation proceeding the denial of a waiver in a separate proceeding, we find that the waiver was properly denied." (Emphasis added.)

In *Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979), the petitioner sought to overrule a decision of the District Director denying a petition to defer deportation indefinitely. The issue whether we had appellate jurisdiction under section 106(a) was never raised by the parties or considered by the court. We construe that opinion, denying relief to the petitioner, to have been made on the same basis as *Wei-Ming Chang;* that is, the existence of section 106(a) jurisdiction was assumed but not decided.

quasi-judicial hearing to develop the facts. Ghorbani's claim is that normally the District Director would have reinstated his student status by retroactively approving his school transfer and his employment. He contends that the reason he was not granted reinstatement was because he is Iranian, and that the normal criteria were not applied because of the then-current sentiment against Iranian students.

Before we could properly review this contention on appeal, a factual record would have to be developed. Ghorbani sought to introduce facts supporting this charge at the deportation hearing, but the immigration judge refused to permit it, on the ground he had no authority to review the discretionary decisions of the District Director. The BIA agreed that no such authority existed, citing *Matter of Halabi*, 15 I&N Dec. 105 (BIA 1974), and *Matter of Geronimo*, 13 I&N Dec. 680 (BIA 1971). It concluded that it and the immigration judge are not authorized to pass on certain matters in which the Attorney General has conferred authority on District Directors. *Matter of Yazdani*, 17 I&N Dec. 626 (BIA 1981) *citing Matter of Teberen*, 15 I&N Dec. 689 (BIA 1976); *Matter of Hosseinpour*, 15 I&N Dec. 191 (BIA 1975), *aff'd mem.*, 520 F.2d 941 (5th Cir. 1975); *Matter of Gallares*, 14 I&N Dec. 250 (BIA 1972); *Matter of Sourbis*, 11 I&N Dec. 335 (BIA 1965). *See* 1A Gordon and Rosenfeld, *Immigration Law and Procedure*, § 5.7b p. 5–84 and 1, § 1.10c, p. 1–65—69 (1982).[14]

■ The courts of appeals do have authority to determine whether the immigration judge and BIA have correctly interpreted the regulations governing their jurisdiction. *See Unification Church v. Attor-ney General for the United States*, 581 F.2d 870, 878 (D.C. Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978). We have no basis to find this construction unreasonable, particularly with the deference that is due to an agency construing its own regulations. It could also be argued that the congressional intent to eliminate piecemeal appeals required the Attorney General to enact regulations that would draw into the section 242(b) deportation hearing a review of this type of prior discretionary decision by the District Director. However, as the Supreme Court recognized in *Cheng Fan Kwok* and *Foti*, the legislative history imposes no such requirement. The Court acknowledged that the Attorney General could expand or narrow the section 106(a) appellate jurisdiction by modifying the matters to be included within the section 242(b) proceedings.[15]

It would be most anomalous to conclude that, under section 106(a) jurisdiction to review final deportation orders resulting from section 242(b) proceedings, we could remand the case to the BIA or the immigration judge for a hearing on factual matters that they lacked authority to hear initially. It would be equally anomalous to by-pass the BIA and immigration judge and remand directly to the District Director, when his decision is expressly excluded from consideration in the section 242(b) proceeding.

■ We therefore conclude that our appellate jurisdiction under section 106(a) does not extend to a review of the discretionary decision of the District Director in refusing to reinstate nonimmigrant student status. Such relief as may be available to Ghorbani on this issue must originate with the district court.[16]

---

14. *See also* 1 Gordon and Rosenfeld, *Immigration Law and Procedure*, §§ 1.10(a) and (b), p. 1–60—64 and 1A, §§ 5.7(a) and (b), p. 5–76—86 (1982), for a helpful general review of the authority and functions of the BIA and immigration judge in historical perspective. *See also Johns v. Department of Justice of United States*, 653 F.2d 884, 889–92 (5th Cir. 1981), for an excellent capsulization of functions of the District Director, immigration judge and BIA in connection with deportation proceedings.

15. *See Cheng Fan Kwok*, 392 U.S. at 216, 88 S.Ct. at 1976 and *Foti*, 375 U.S. at 229–30, 84 S.Ct. at 313–14. *See also* footnote 9, *supra*.

16. Ancillary administrative actions of the District Director are subject to review in declaratory judgment actions or requests for injunctions in the district courts under the Administrative Procedure Act, 5 U.S.C. § 702 under 8 U.S.C. § 1329, or by means of habeas corpus. *See* 2 Gordon and Rosenfeld *Immigration Law and Procedure*, §§ 8.5, 8.6, 8.7 and 8.8, p. 8–33

The decision of the Board of Immigration Appeals is AFFIRMED.

POOLE, Circuit Judge, concurring specially.

I concur in the majority opinion's conclusion that we are without jurisdiction to review the discretionary decision of the District Director refusing to reinstate Ghorbani's nonimmigrant student status. However, I am unable to endorse the majority's attempt to explain our prior decisions in this area using the gloss of "pendent jurisdiction."

In *Waziri v. INS*, 392 F.2d 55 (9th Cir. 1968), we held that section 106(a) conferred jurisdiction on this court to review the validity of an order rescinding the petitioner's permanent resident status even though that determination was made prior to petitioner's section 242 deportation hearing. There is no indication in *Waziri* that the court relied on the concept of pendent jurisdiction. Instead, it concluded that the recission of Waziri's status was the "logical predicate" of the deportation order and therefore meaningful review of the order would require that the court examine the earlier decision. 392 F.2d at 56–57. *See also Bachelier v. INS*, 625 F.2d 902 (9th Cir. 1980).

Shortly afterwards, the Supreme Court narrowly limited the scope of appeal under section 106(a). In *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), the petitioner appealed the denial of his request for a stay of deportation filed after he had been found deportable in a section 242(b) proceeding. The Court held that the court of appeals did not have jurisdiction to review the decision denying the stay, stating:

We hold that the judicial review provisions of § 106(a) embrace only those de-

terminations made during a proceeding conducted under § 242(b), including those determinations made incident to a motion to reopen such proceedings.

392 U.S. at 216, 88 S.Ct. at 1976.

Subsequently, in *Chadha v. INS*, 634 F.2d 408 (9th Cir. 1980), *appeal pending*, 454 U.S. 812, 102 S.Ct. 87, 70 L.Ed.2d 80 (1981), this court asserted jurisdiction under section 106(a) to review the constitutionality of a federal statute permitting congressional disapproval of decisions of the immigration judge suspending deportation. Relying on *Waziri*, the court observed that although the challenged congressional action took place outside the context of a section 242(b) hearing, it "nevertheless directly leads to a final order of deportation." It concluded that jurisdiction existed to review the "legal validity of determinations on which the final order of deportation is contingent." 634 F.2d at 413.

Although *Chadha* followed the Supreme Court's decision in *Cheng Fan Kwok*, it does not rely on the dicta in that case which the majority here cites discussing the possibility of pendent jurisdiction. Instead, as indicated, this court concluded that meaningful review of the deportation order *required* review of decisions underlying the order. That rationale is in fact inconsistent with the generally recognized definition of a pendent claim as a "separate but parallel claim for relief" which a court may reach at its discretion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 722, 726, 86 S.Ct. 1130, 1136, 1139, 16 L.Ed.2d 218 (1966).

*Chadha's* jurisdictional holding has been criticized as inconsistent with *Cheng Fan Kwok* in permitting review of decisions made outside the section 242(b) proceeding. *See Dastmalchi v. INS*, 660 F.2d 880, 888–89 (3d Cir. 1981).[1] In my view that criticism is

—58. *See also Johns*, 653 F.2d at 892. Because we conclude that we lack jurisdiction to review the discretionary decision of the District Director, we do not reach the question whether the provisions of the Operating Instructions, OI 242.1a(21) or the provisions of the Immigrant Inspector's Handbook, p. 9–15, cited by peti-

tioner, confer a right on the alien. *See Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979).

1. Indeed, the jurisdictional issue, as well as the one-house veto question, are before the Supreme Court in the pending appeal. *See* 454 U.S. 812, 102 S.Ct. 87, 70 L.Ed.2d 80 (1981) (ordering parties to address the jurisdictional issue at oral argument).

apt. Nevertheless, *Chadha* remains the law of the circuit until changed and I do not believe that the majority's attempt to rationalize its holding as an example of pendent jurisdiction aids our determination here.

Applying the standard set out in *Chadha*, the deportation order here was "contingent upon" the District Director's discretionary decision not to reinstate Ghorbani's student status. Yet, as the majority opinion points out, Ghorbani's objections to the Director's decision were not addressed in a factual hearing before an immigration judge as in *Waziri*, nor are they purely questions of law, as in *Chadha*, which this court may reach directly. Thus the opinion is correct in concluding that the circumstances here do not fit into either of the situations which this court has identified as appropriate for review of discretionary decisions outside of a section 242(b) proceeding. It is for those reasons, only, that we have no jurisdiction under section 106(a) to review the District Director's decision refusing to reinstate Ghorbani's status. In sum I reach the same terminus as the majority opinion without taking what I consider is an unnecessary detour.