Ester Ama DZANDU; Emmanuel Kwadwa Dwomoh–Tweneboah, Petitioners,

v.

Alberto R. GONZALES,* Attorney General, Respondent.

No. 02–73992.
Agency No. A77–159–570/571.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 2004.

Decided March 8, 2005.

* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Bart Klein, Mark B. Nerheim, Law Offices of Bart Klein, Seattle, WA, for Petitioners.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, WWS–District Counsel, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, Michael P. Lindemann, Douglas E. Ginsburg, DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before ALARCÓN, W. FLETCHER, and RAWLINSON, Circuit Judges.

## MEMORANDUM**

Esther Dzandu and her son, Emmanuel Kwadwa Dwomo–Tweneboah, petition this court to review an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of their motion to terminate removal proceedings. Petitioners contend that the INS[1] is equitably estopped from removing them because the INS violated its regulations when it rescinded their adjustment of status. Additionally, petitioners argue that the INS's regulatory violations rendered their removal orders unlawful. We grant the petition for review, vacate the underlying rescission and removal orders, and remand for a new rescission hearing.

### Jurisdiction

We have jurisdiction over a timely petition for review of a final order of removal under 8 U.S.C. § 1252(b). Our jurisdiction over final orders of removal "carries with it the power to examine the validity of [a] rescission order that lies at the base of the [removal] order." *Bachelier v. INS,* 625 F.2d 902, 904 (9th Cir.1980). Absent such review, "where the final order entirely depends upon the rescission of status, as in this case, our review of the [removal] order would be meaningless." *Id.* (citing *Waziri v. INS,* 392 F.2d 55 (9th Cir.1968)).

### Standard of Review

Since the BIA adopted the decision of the IJ as the final agency determination, we review the IJ's decision. *Vukmirovic v. Ashcroft,* 362 F.3d 1247, 1251 (9th Cir. 2004). We review factual findings for substantial evidence. *Khup v. Ashcroft,* 376

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. On March 1, 2003, the INS ceased to exist and its functions were transferred to the Department of Homeland Security. *Perez–Gonzalez v. Ashcroft,* 379 F.3d 783, 784 n. 1 (9th Cir.2004). Because the relevant agency actions in this case occurred before this transfer, we refer to the agency as the INS.

F.3d 898, 902 (9th Cir.2004). We review legal questions *de novo*. *de Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir.2004).

I

On March 14, 1999, Mrs. Dzandu filed an application for adjustment of status to lawful permanent residency. She also filed an adjustment application on behalf of her son, Emmanuel.[2] Mrs. Dzandu was eligible to receive a visa due to her selection to participate in the 1999 diversity lottery program.

An alien such as Mrs. Dzandu who overstays her initial visa is generally ineligible for adjustment of status. 8 U.S.C. § 1255(c)(2). As the beneficiary of an I–130 visa petition[3] filed on her behalf before January 14, 1999, however, Mrs. Dzandu was eligible to adjust her status under 8 U.S.C. § 1255(i). To adjust under 8 U.S.C. § 1255(i), an applicant must submit a supplemental form (Supplement A) and a $1000 additional fee along with the standard I–485 adjustment of status application. *See* 8 C.F.R. § 245.10(b). Mrs. Dzandu's adjustment application did not include the additional fee or supplemental form.

When an alien who is eligible to adjust his or her status under 8 U.S.C. § 1255(i) submits an application without the additional fee and supplemental form, 8 C.F.R.

§ 245.10(d) requires the INS to give applicants

the opportunity to amend an adjustment of status application … in order to request consideration under the provisions of [INA] section 245(i), if it appears that the alien is not otherwise ineligible for adjustment of status. If the application for adjustment of status is pending before the Service, the Service shall notify the applicant in writing of the Service's intent to deny the adjustment of status application … unless Supplement A to Form I–485 and any required additional sum is filed within 30 days of the date of the notice.

8 C.F.R. § 245.10(d) (1999).

More than six months elapsed between Mrs. Dzandu's submission of her adjustment application on March 14, 1999, and her adjustment interview on September 10, 1999. The INS did not notify Mrs. Dzandu that she needed to amend her adjustment application to request consideration under 8 U.S.C. § 1255(i). We agree with Mrs. Dzandu that, consistent with 8 C.F.R § 245.10(d), the INS should have sent her a notice during this period informing her of its intent to deny her application unless she filed the additional fee and supplemental form required for her to adjust her status under 8 U.S.C. § 1255(i).[4]

---

**2.** Emmanuel's eligibility for a diversity visa was derivative to that of his mother. 8 U.S.C. § 1153(d). For that reason, although Emmanuel is a party to this appeal, we generally refer only to Mrs. Dzandu in our discussion.

**3.** To be eligible for adjustment of status based on a family relationship, an alien must have a relative who is a United States citizen who is willing to sponsor him or her by filing an I–130 petition for alien relative. 8 C.F.R. § 204.1(a)(1). Form I–130 establishes the petitioner's status as well as his or her relationship to the alien seeking adjustment. Mrs. Dzandu's sister, a United States citizen, filed

an I–130 petition on her behalf on February 14, 1996.

**4.** In its supplemental brief, the Government's analysis concentrates on the Service's failure to send a § 245.10(d) notice in the weeks after Mrs. Dzandu was granted adjustment of status. By its plain terms, however, 8 C.F.R. § 245.10(d) governs INS processing of *pending* adjustment applications. Once Mrs. Dzandu's adjustment application was approved, she no longer had an application pending with the Service and 8 C.F.R. § 245.10(d) was inapplicable. Our analysis of 8 C.F.R. § 245.10(d) therefore focuses on

While 8 C.F.R. § 245.10(d) does not contain an explicit timing requirement, we are not persuaded by the Government's argument that the INS is entitled to delay sending a § 245.10(d) notice indefinitely. The purpose of 8 C.F.R. § 245.10(d) is to ensure that aliens eligible to adjust under 8 U.S.C. § 1255(i) who file deficient adjustment applications have an opportunity to amend their original filings to request consideration under this provision. For aliens with extremely time-sensitive diversity applications, 8 C.F.R. § 245.10(d) would be rendered nugatory if the INS were entitled to delay sending a notice to an applicant until after the end of the fiscal year, when the alien's eligibility for a diversity visa would expire.

We emphasize that the INS's obligation to send a notice under 8 C.F.R. § 245.10(d) is not discretionary. *See* 8 C.F.R. § 245.10(d) (providing that the Service "shall notify the applicant in writing" of the Service's intent to reject the application unless the alien files the additional fee and supplemental form). Despite the absence of an express timing requirement, the mandatory language persuades us that the Service is obligated to send the notice within a reasonable time. *Cf.* 2 Am.Jur.2d Admin. Law § 371 (2004) ("A court reviewing [sic] federal agency action has the authority to compel agency action unlawfully withheld or unreasonably delayed.").

Although Mrs. Dzandu never filed the additional fee and supplemental form necessary to adjust under 8 U.S.C. § 1255(i), the INS approved her adjustment of status applications on September 20, 1999. Later that day, INS officials realized that petitioners were ineligible for adjustment under 8 U.S.C. § 1255(i) because they had overstayed their initial visas. INS officials

the more than six months in which Mrs. Dzandu did have an adjustment application

contacted the State Department and requested that it cancel the diversity visa numbers that had been allocated to the petitioners. On October 13, 1999, the INS sent Mrs. Dzandu a notice of its intent to rescind her adjustment of status.

Within thirty days of receiving this notice, Mrs. Dzandu filed an answer in which she asserted that she was eligible for adjustment of status. She requested that the INS withdraw its notice of intent to rescind or, in the alternative, grant her a rescission hearing. If an alien files a answer within thirty days of receiving a notice of intent to rescind which either contests or denies any allegation in the notice, *or* requests a hearing, "a hearing ... *shall* be conducted by an immigration judge...." 8 C.F.R. § 246.3 (emphasis added). Mrs. Dzandu's answer both disputed the notice's allegations and requested a hearing before an IJ. Rather than grant her a rescission hearing, however, the INS summarily rescinded Mrs. Dzandu's adjustment of status and placed her in removal proceedings. In so doing, the INS violated 8 C.F.R. § 246.3.

At oral argument, the Government suggested that Mrs. Dzandu was not prejudiced by the failure to accord her a rescission hearing because a final order of removal is sufficient to rescind an alien's lawful permanent resident status. *See* 8 U.S.C. § 1256(a) ("Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien ... and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status."). We disagree.

pending.

While a removal order is sufficient under 8 U.S.C. § 1256(a) to rescind an alien's lawful permanent resident status, the statute does not authorize the Service to rescind an alien's status without *any* hearing. Where the alien has timely requested a rescission hearing, moreover, § 246.3 mandates that such a hearing be held, notwithstanding 8 U.S.C. § 1256(a).[5] Indeed, Mrs. Dzandu would not have been in removal proceedings if the INS had not rescinded her adjustment of status. Although she had overstayed her initial visitor visa, as we explained above, Mrs. Dzandu was eligible to adjust her status to lawful permanent residency under 8 U.S.C. § 1255(i). While Mrs. Dzandu did not file the required $1000 fee and supplemental form with her adjustment application, the INS, in violation of 8 C.F.R. § 245.10(d), neglected to give her notice of her need to amend her adjustment application. Had the INS given Mrs. Dzandu this notice, Mrs. Dzandu asserts that she would have filed the required additional fee and supplemental form, successfully adjusted under 8 U.S.C. § 1255(i), and would not have been subject to removal for her visa overstay.

## II

■ We have adopted a two-prong test to determine whether the INS's violation of a regulation renders subsequent agency action unlawful. *United States v. Calder-on–Medina*, 591 F.2d 529, 531 (9th Cir. 1979). First, the regulation in question must serve "a purpose of benefit to the alien." *Id.* Second, the violation of the regulation must have "prejudiced interests of the alien which were protected by the regulation." *Id.; see also Matter of Garcia–Flores*, 17 I. & N. Dec. 325, 328–29 (BIA 1980) (adopting *Calderon–Medina* standard). "To show prejudice, the alien must establish more than that he would have availed himself of the procedural protections; he must produce 'concrete evidence' that the violation had the potential for affecting the outcome of the proceeding." *Hernandez–Luis v. INS*, 869 F.2d 496, 498 (9th Cir.1989) (citing *United States v. Cerda–Pena*, 799 F.2d 1374, 1379 (9th Cir.1986)).

We conclude that the regulations the INS violated in this case were designed to benefit Mrs. Dzandu. A lawful permanent resident enjoys a due process right to notice and a hearing before her status is rescinded. *See, e.g., Kwong Hai Chew v. Colding*, 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953) ("It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there . . . . [h]e may not be deprived of his life, liberty, or property without due process of law.").[6] The regulatory requirement that the INS provide an alien a rescission hearing upon a timely

---

5. We discern no inconsistency between 8 C.F.R. § 246.3 and 8 U.S.C. § 1256(a). If the INS does not wish to hold a rescission hearing, it is entitled to place an alien such as Mrs. Dzandu directly in removal hearings where the alien's eligibility for adjustment may be adjudicated before an IJ.

6. In its brief, the Government contends that Mrs. Dzandu lacks a viable due process claim because an alien does not have protected liberty interest in an adjustment of status application. The Government ignores the crucial distinction between an alien's interest in an adjustment application and an alien's interest in her status as a lawful permanent resident. While the decision whether to grant adjustment of status is committed to the Attorney General's discretion, rescission of adjustment of status is not. In any event, Mrs. Dzandu does not need to establish a Constitutional violation to prevail under *Calderon–Medina*. *See Calderon–Medina*, 591 F.2d at 530–31 (rejecting argument that the INS's violation of regulation renders deportation unlawful only if it denies an alien's due process).

request implements this constitutional guarantee. *Cf. United States v. Caceres,* 440 U.S. 741, 749, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) ("A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law."); *Matter of Garcia–Flores,* 17 I. & N. Dec. at 328 ("[W]here agency action is required by constitutional or statutory law, violation of an implementing requirement is subject to serious challenge."). Although 8 C.F.R. § 245.10(d)'s notice provision is not required by the Constitution or federal statute, we conclude that the regulation is intended to benefit aliens such as Mrs. Dzandu who are eligible to adjust under 8 U.S.C. § 1255(i), but whose adjustment applications do not contain the required additional fee and supplemental form.

Whether Mrs. Dzandu was prejudiced by the INS's regulatory violations is a question that we cannot resolve on the record before us. The parties dispute whether Mrs. Dzandu would have been able to pay the additional $1000 fee if she had been given the notice required by 8 C.F.R. § 245.10(d). If Mrs. Dzandu could have paid the $1000 fee in time for her to adjust successfully under 8 U.S.C. § 1255(i), she was prejudiced by the INS's violation of 8 C.F.R. § 245.10(d). We therefore vacate the underlying rescission and removal orders, order petitioners' lawful permanent resident status restored, and remand for a new rescission hearing before an IJ. *See* 28 U.S.C. § 2347(b)(1) ("When the agency has not held a hearing before taking the action of which review is sought by the petition, the court of appeals shall .... remand the proceedings to the agency to hold a hearing, when a hearing is required by law...."); *Waziri,* 392 F.2d at 57 (vacating deportation order and remanding for a new rescission hearing where it was unclear from the record

whether the immigration judge in the rescission hearing applied the correct burden of proof).

The inquiry at the rescission hearing will be limited to whether Mrs. Dzandu would have been able to pay the additional $1000 if she had been given a timely § 245.10(d) notice before her adjustment interview on September 20, 1999. If the IJ concludes that Mrs. Dzandu would have been able to pay the fee in a timely fashion, she and her son are entitled to retain their lawful permanent resident status.

We now address the remaining arguments raised by the parties. First, we disagree with the Government's contention that granting the petition is inconsistent with our decision in *Carrillo–Gonzalez v. INS,* 353 F.3d 1077 (9th Cir.2003). In *Carrillo–Gonzalez,* we held that an IJ was without authority to apply equitable tolling to the congressionally-mandated, one-year deadline on the issuance of diversity visas. *Id.* at 1079. Unlike the petitioner in *Carrillo–Gonzalez,* Mrs. Dzandu and her son were granted adjustment of status and allocated diversity visas *before* fiscal year 1999 expired. Ordering the INS to restore petitioners' lawful permanent resident status therefore would not conflict with the statutory deadline on the issuance of diversity visas.

Second, we reject Mrs. Dzandu's argument that the INS's regulatory violations constitute affirmative misconduct, and that the INS should be estopped from rescinding her adjustment of status or removing her. Mrs. Dzandu has failed to demonstrate that INS officials "made a knowing false representation or concealment of material facts" upon which she relied to her detriment. *Mukherjee v. INS,* 793 F.2d 1006, 1008 (9th Cir.1986).

Third, Mrs. Dzandu's argument that the BIA violated its streamlining regulations

in summarily affirming her appeal is moot because we have granted the petition. *See Vukmirovic,* 362 F.3d at 1253 (holding that a court need not address petitioner's argument that the BIA violated streamlining regulations when the court grants the petition).

A final observation is warranted. The facts of this case are quite unusual. We do not expect to see similar petitions presenting the same or similar fact pattern in the future. It is for this reason that we issue a memorandum disposition rather than a published opinion.

The petition is **GRANTED.**