**Malek Abdullah MALEK–MARZBAN and Badry Malek-Marzban, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 80–1779.**

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1981.
Decided June 29, 1981.

Edward J. Birrane, Jr., Baltimore, Md., for petitioners.

Margaret J. Perry, Dept. of Justice, Washington, D. C. (James P. Morris, Dept. of Justice, Washington, D. C., on brief), for respondent.

Before HAYNSWORTH, Senior Circuit Judge, MURNAGHAN, Circuit Judge, and RAMSEY *, District Judge.

HAYNSWORTH, Senior Circuit Judge:

The petitioners, husband and wife, are Iranian nationals who are subject to a valid deportation order. The time during which they could be permitted voluntarily to depart the United States was affected by the April 25, 1980 amendment of 8 C.F.R. § 244.1, one of several amendments promulgated by the INS in response to the taking of American hostages in Iran. The petitioners contend that § 244.1 is procedurally defective under the Administrative Procedure Act and unconstitutional under the equal protection clause of the Fifth Amendment. We find these contentions meritless, and we affirm the INS order and dismiss the petition.

I.

On January 20, 1979 the petitioners entered the United States as nonimmigrant visitors for pleasure. Before their visas expired on July 12, 1979 they obtained an extension until January 12, 1980.

On November 4, 1979, Iranian militants occupied the United States Embassy in Tehran and took hostages. President Carter promptly made several responses, which in-

* Honorable Norman P. Ramsey, United States District Judge for the District of Maryland, sitting by designation.

cluded discontinuing oil purchases from Iran, declaring a national emergency, freezing all Iranian assets subject to the jurisdiction of the United States, delegating to the Attorney General and Secretary of State his authority to govern the entry of aliens into the United States, and ordering the Iranian embassy and consulate to return most of its diplomatic staff to Iran.

The Attorney General promulgated several regulations modifying the INS policy toward Iranian nationals who were in this country. On November 13, 1979, he promulgated 8 C.F.R. § 214.5, which requires all Iranian post-secondary school students to report to a local INS officer or campus representative and provide information about their residences and the maintenance of their nonimmigrant status. This regulation was later upheld in *Narenji v. Civiletti*, 617 F.2d 745 (D.C.Cir.1979).

On December 28, 1979 the petitioners applied for further extensions of their visas. An extension was granted until June 11, 1980.

On April 7, 1980 President Carter broke diplomatic relations with Iran. The INS then promulgated the amendment of 8 C.F.R. § 244.1. Prior to the amendment, § 244.1 provided that, after an alien has been ordered deported,

> if the alien establishes that he is willing and has the immediate means with which to depart promptly from the United States, a special inquiry officer in his discretion may authorize the alien to depart voluntarily from the United States in lieu of deportation within such time as may be specified by the special inquiry officer when first authorizing voluntary departure, and under such conditions as the district director shall direct.

The amendment, published in the *Federal Register* on April 25, 1980 and immediately effective, added this sentence:

> In the case of a national of Iran, the amount of time within which he/she may be granted to depart voluntarily by the

special inquiry officer shall not exceed 15 days from the date the special inquiry officer renders his/her decision in the case.

On June 5, 1980, four days after their visas expired, the petitioners applied for another extension. The INS refused, but gave them until June 25, 1980 to depart voluntarily from the United States.

On July 24, 1980 the INS issued a show cause order, charging the petitioners with being deportable as aliens who had remained longer than was authorized. At a hearing before an immigration judge on August 15, 1980 they were found deportable. The judge allowed voluntary departure until August 30, 1980, the maximum fifteen days permitted by the amended § 244.1.

On August 25, 1980 the petitioners appealed to the Board of Immigration Appeals. The Board dismissed the appeal on October 7, 1980 but offered them voluntary departure for thirty days or any extension beyond that as the district director may grant.

On October 27, 1980 the petitioners asked the district director for a stay of the deportation order, but it was denied. The district director gave them an additional week, until November 14, 1980 for voluntary departure.

On November 6, 1980 the petitioners filed their petition for review with this court, thereby triggering an automatic stay of the deportation order.

## II.

■ The petitioners claim that § 244.1 is defective because it was not promulgated in compliance with 5 U.S.C.A. § 553. The claim fails because the amendment falls under two exceptions to the APA's rulemaking requirements.[1]

Section 553(a)(1) provides that § 553 "applies . . . except to the extent that there is

---

1. *Cf. Yassini v. Crosland,* 618 F.2d 1356 (9th Cir. 1980) (upholding an INS directive that revoked the deferred voluntary departure dates previously granted to Iranian nationals in this country).

involved ... a military or foreign affairs function of the United States." The involvement of foreign affairs in the amendment of § 244.1 is obvious and is stated concisely in the announcement of the amendment in the *Federal Register*:

> Because of the Iranian Government's failure to resolve the international crisis it created by the unlawful detention of American citizens in the United States Embassy in Tehran, the President of the United States announced the break in diplomatic relations with that country on April 7, 1980. In further response to the international crisis it has been determined to expedite the departure of Iranians unlawfully present in the United States. Consequently, the Immigration and Naturalization Service will amend its regulations to limit to 15 days the amount of time an immigration judge may grant an Iranian national in deportation proceedings to depart the United States voluntarily under section 244(e) of the Immigration and Nationality Act.

45 Fed.Reg. 27916 (April 25, 1980). We are not persuaded by the petitioners' argument that the INS is estopped from asserting the foreign affairs exception because it has routinely complied with the APA rulemaking requirements in the past. Voluntarily submitting a policy decision involving a foreign affairs function to rulemaking procedures is commendable, but it does not restrict an agency's prerogatives when circumstances require swift action.

█ Section 553(b)(3)(B) provides that § 553(b) "does not apply ... when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." The INS discharged its burden to show good cause by concluding its announcement of the amendment with this statement:

> These general statements of policy are effective immediately because of the ur-

gency of the international crisis. Publication is made in order to swiftly and efficiently advise the public of these actions.

45 Fed.Reg. 27917 (April 25, 1980).[2]

### III.

█ The petitioners' contention that the amendment of § 244.1 deprives them of the equal protection of the laws merits little discussion. When the federal government classifies aliens on the basis of nationality, the classification must be sustained if it has a rational basis. *Narenji v. Civiletti*, 617 F.2d 745 (D.C.Cir.1979); *Alvarez v. District Director, INS*, 539 F.2d 1220 (9th Cir. 1976); *Noel v. Chapman*, 508 F.2d 1023 (2d Cir. 1975); *Dunn v. INS*, 499 F.2d 856 (9th Cir. 1974). Notwithstanding the petitioners' description of the amendment as "an emotional, patriotic, flag-waving reaction," to the hostage crisis, we have no doubt that § 244.1 passes the rational basis test. The United States is not bound to treat the nationals of unfriendly powers with the same courtesy and consideration it extends to nationals of friendly powers. The Iranian Government had committed serious unfriendly acts against the United States and its diplomatic representatives in Tehran. No resolution of that crisis had then been achieved. It was a perfectly rational response to provide for the early departure of Iranian nationals illegally in this country and to limit to fifteen days the time within which an immigration judge might permit voluntary departure.

*AFFIRMED.*

---

**2.** The above statement also suffices as demonstration of good cause for publishing a substan-
tive rule less than thirty days before its effective date. *See* 5 U.S.C. § 553(d)(3).