Mohammad NADEMI, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Faragollah SADEGH–POUR, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Nos. 81–1097, 81–1418.

United States Court of Appeals, Tenth Circuit.

May 12, 1982.

Rehearing Denied June 25, 1982.

Certiorari Denied Oct. 4, 1982.
See 103 S.Ct. 161.

Kenneth H. Stern of Karp, Goldstein & Stern, Denver, Colo., for petitioners-appellants Nademi and Sadegh-Pour.

James P. Morris and Robert Kendall, Jr., Attys., Dept. of Justice, Washington, D. C., for respondent-appellee in No. 81–1097; and Lauri Steven Filppu and Robert Kendall, Jr., Attys., Dept. of Justice, Washington, D. C., for respondent-appellee in No. 81–1418.

Before SETH, Chief Judge, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Petitioners bring this appeal to challenge the promulgation by the Commissioner of the Immigration and Naturalization Service (the Service) of a rule limiting the grant of voluntary departure to Iranian nationals to fifteen days. Both petitioners are natives and citizens of Iran who originally entered the United States as nonimmigrant students.

After a hearing before an immigration judge, petitioner Mohammad Nademi was found to be deportable, pursuant to § 241(a)(9) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1251(a)(9), on the ground that he failed to comply with the conditions of his nonimmigrant status. Specifically, Mr. Nademi had failed to attend the college authorized by the Service and had instead attended an unauthorized college. Mr. Nademi stipulated to the charges in return for an assurance that he would be eligible for voluntary departure in

lieu of deportation. He requested 90 days voluntary departure to allow him to finish the semester at college. The immigration judge denied this request and limited voluntary departure to 15 days on the basis of the regulation here challenged, 8 C.F.R. § 244.1 (1981). The Board of Immigration Appeals dismissed his appeal and he then filed a petition in this court for review of the Board's order.

Petitioner Faragollah Sadegh-Pour was found after a hearing to be deportable, pursuant to § 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2), on the ground that he remained in the United States for a longer time than permitted by the Service. Mr. Sadegh-Pour admitted to the charge and requested voluntary departure at the end of the school semester. The immigration judge granted voluntary departure but limited it to 15 days, again pursuant to 8 C.F.R. § 244.1. The Board of Immigration Appeals dismissed his appeal and petition for review was filed in this court.

On appeal, petitioners raise identical contentions. They argue that the Commissioner exceeded his authority in promulgating the regulation; that the regulation was promulgated in violation of § 553 of the Administrative Procedure Act, 5 U.S.C. § 553; that the regulation denies them equal protection of the laws in violation of the Fifth Amendment to the United States Constitution; and that the regulation constitutes an impermissible prejudgment of their applications for discretionary relief.[1]

The challenged regulation provides:

Pursuant to Part 242 of this chapter and section 244 of the Act a special inquiry officer in his discretion may authorize the suspension of an alien deportation; or, if the alien establishes that he is willing and has the immediate means with which to depart promptly from the United States, a special inquiry officer in his discretion may authorize the alien to depart voluntarily from the United States in lieu of deportation within such time as may be specified by the special

inquiry officer when first authorizing voluntary departure, and under such conditions as the district director shall direct. *In the case of a national of Iran, the amount of time within which he/she may be granted to depart voluntarily by the special inquiry officer shall not exceed 15 days from the date the special inquiry officer renders his/her decision in the case* . . . .

8 C.F.R. § 244.1 (1981), as amended at 45 Fed.Reg. 27,917 (Apr. 25, 1980) (emphasis added). Only the emphasized sentence of the regulation is challenged here.

■ The first issue is whether the Commissioner exceeded his authority in promulgating the limitation on voluntary departure for Iranian nationals. In § 244 of the Act, 8 U.S.C. § 1254(e), Congress gave the Attorney General power to grant voluntary departure in lieu of deportation to any alien. That section provides that "[t]he Attorney General may, in his discretion, permit any alien under deportation proceedings . . . to depart voluntarily from the United States at his own expense in lieu of deportation . . . ." *Id.* The Attorney General, in turn, gave the Commissioner of the Service broad authority to enforce the Act:

Without divesting the Attorney General of any of his powers, privileges, or duties under the immigration and naturalization laws, and except as to the Board, there is delegated to the Commissioner the authority of the Attorney General to direct the administration of the Service and to enforce the act and all other laws relating to the immigration and naturalization of aliens. The Commissioner may issue regulations as deemed necessary or appropriate for the exercise of any authority delegated to him by the Attorney General, and may redelegate any such authority to any other officer or employee of the Service.

8 C.F.R. § 2.1 (1981). Since Congress gave the Attorney General the power to grant discretionary relief in the nature of volun-

---

1. In addition to answering these arguments, respondent contends that the case is moot. In view of our resolution of these issues, we find it unnecessary to resolve the mootness question.

tary departure, and since the Attorney General delegated to the Commissioner his power "to enforce the act," *id.*, we hold that the Commissioner did not exceed his authority under the Act in promulgating the challenged regulation.

We find further authority for the Commissioner's action in the entire course of events surrounding the November 4, 1979 seizure of American hostages in Iran, and, more specifically, in Executive Order No. 12172 (Nov. 26, 1979), *reprinted in* [1979] U.S.Code Cong. & Ad.News 3363. In that order the President delegated to the Attorney General and the Secretary of State his authority under 8 U.S.C. § 1185(a)(1) to govern the entry and departure of aliens into and from the United States, with specific reference to Iranians holding nonimmigrant visas. On April 7, 1980, in response to the failure of the Iranian government to release the hostages, the President severed diplomatic relations with Iran. Eighteen days later the Commissioner promulgated the challenged amendment to 8 C.F.R. § 244.1. 45 Fed.Reg. 27,917 (Apr. 25, 1980). The stated purpose of the amendment was to expedite the departure of Iranians who were unlawfully present in the United States. *Id.* at 27,916.

Title 8 C.F.R. § 2.1, quoted above, delegates to the Commissioner "the authority of the Attorney General . . . to enforce the act *and all other laws* relating to the immigration and naturalization of aliens." 8 C.F.R. § 2.1 (1981) (emphasis added). We view the reference to "all other laws" as encompassing Executive Order No. 12172. Since there is a proper chain of delegation from the President to the Attorney General and from the Attorney General to the Commissioner, we are convinced that the Commissioner did not exceed his authority in promulgating the challenged amendment. The amendment does no more than implement the President's foreign policy of severing relations with Iran. It was entirely rational for the Commissioner to alter immigration policy so as to bring it into conformity with the President's foreign policy toward Iran. It is clear that the Commissioner did not develop this foreign policy; he merely

implemented it. Such implementation is clearly within the scope of the Commissioner's powers. *See Yassini v. Crosland,* 618 F.2d 1356, 1360–61 (9th Cir. 1980) (crucial question is "whether Commissioner Crosland was acting independently of the President and Attorney General and in effect announcing his own foreign policy, or merely implementing the expressed foreign policy of the President").

■ Petitioners' second argument is that the amendment to § 244.1 violates § 553 of the Administrative Procedure Act (APA), 5 U.S.C. § 553, because its promulgation was not preceded by notice and comment. For the reasons given by the Fourth Circuit in resolving this issue, we hold that the amendment was exempt from the notice and comment provisions of the APA under the "good cause" and "foreign affairs function" exceptions to these requirements. 5 U.S.C. §§ 553(b)(3)(B), 553(a)(1). *Malek-Marzban v. INS,* 653 F.2d 113, 115–16 (4th Cir. 1981). *See also Yassini v. Crosland,* 618 F.2d 1356, 1359–61 (9th Cir. 1980) (finding that the same two exceptions applied to a directive of the Commissioner revoking the deferred voluntary departure dates previously granted to Iranian nationals in this country).

■ Petitioners next contend that the regulation denies Iranian nationals the equal protection of the laws in violation of the Fifth Amendment to the United States Constitution. In rejecting an identical contention, the Fourth Circuit reasoned as follows:

The petitioners' contention that the amendment of § 244.1 deprives them of the equal protection of the laws merits little discussion. When the federal government classifies aliens on the basis of nationality, the classification must be sustained if it has a rational basis. *Narenji v. Civiletti,* 617 F.2d 745 (D.C.Cir. 1979); *Alvarez v. District Director, INS,* 539 F.2d 1220 (9th Cir. 1976); *Noel v. Chapman,* 508 F.2d 1023 (2d Cir. 1975); *Dunn v. INS,* 499 F.2d 856 (9th Cir. 1974). Notwithstanding the petitioners' descrip-

tion of the amendment as "an emotional, patriotic, flag-waving reaction," to the hostage crisis, we have no doubt that § 244.1 passes the rational basis test. The United States is not bound to treat the nationals of unfriendly powers with the same courtesy and consideration it extends to nationals of friendly powers. The Iranian Government had committed serious unfriendly acts against the United States and its diplomatic representatives in Tehran. No resolution of that crisis had then been achieved. It was a perfectly rational response to provide for the early departure of Iranian nationals illegally in this country and to limit to fifteen days the time within which an immigration judge might permit voluntary departure.

*Malek-Marzban v. INS*, 653 F.2d 113, 116 (4th Cir. 1981). *See also Mathews v. Diaz*, 426 U.S. 67, 81–82, 96 S.Ct. 1883, 1892–93, 48 L.Ed.2d 478 (1976). Finding no reason to disagree with this reasoning or the authorities cited, we too reject petitioners' equal protection challenge.

Finally, petitioners contend that the amendment impermissibly divests the Service of its power to grant discretionary relief against deportation. It is true, of course, that the amendment divests the special inquiry officer's discretion to grant more than 15 days voluntary departure to an Iranian national. However, it by no means divests the Service of all power to grant discretionary relief against deportation to Iranians. For instance, 8 C.F.R. § 243.4 (1981) authorizes the district director in his discretion to grant a stay of deportation "for such time and under such conditions as he may deem appropriate." More significantly, 8 C.F.R. § 244.2 (1981) empowers the district director to extend the time within which to depart voluntarily as initially established by the special inquiry officer. Thus, even if the special inquiry officer limits voluntary departure for an Iranian to 15 days, the district director has discretion to extend the time for departure. We therefore reject petitioners' final contention.

AFFIRMED.