Nezam TOOLOEE, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 81–7249.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1983.

Decided Dec. 22, 1983.

Donald L. Ungar, Simmons & Ungar, San Francisco, Cal., for petitioner.

Joseph F. Ciolino, Joan Smiley, Dept. of Justice, I.N.S., Washington, D.C., for respondent.

Before TUTTLE,* MERRILL, and PREGERSON, Circuit Judges.

---

* Honorable Elbert Parr Tuttle, Senior U.S. Circuit Judge, Eleventh Circuit, sitting by designation.

1. It is not clear from the record if Tooloee reported to the Immigration & Naturalization Service (INS) because of 8 C.F.R. § 214.5 (1980), *enacted,* 44 Fed.Reg. 65728 (1979), *rescinded,* 46 Fed.Reg. 25598 (1981), which required Iranian nationals to report to the INS before December 31, 1979. The regulation was promulgated in response to the Iranian hostage crisis.

2. 8 C.F.R. § 214.1(c) provides that an application for an extension of stay should be submitted at least fifteen days and not more than

**PREGERSON, Circuit Judge:**

An immigration law judge found that Nezam Tooloee, an Iranian student, was deportable as an overstay. The Board of Immigration Appeals (BIA) affirmed, and Tooloee appeals to this court. Tooloee became an overstay because a District Director refused to grant him an extension of stay. Both the immigration judge and the BIA refused to re-examine the District Director's decision denying Tooloee an extension.

We affirm their refusal to review the District Director's action and hold that at this stage of the proceedings this court is likewise foreclosed from reviewing the District Director's decision. Tooloee must first litigate his claims before the district court.

## I

Nezam Tooloee, an Iranian citizen, entered the United States on September 18, 1978 as a nonimmigrant student and enrolled in Stanford University. Tooloee was authorized to stay in the United States until September 17, 1979. On November 28, 1979, over two months after his nonimmigrant student authorization expired, Tooloee applied for an extension of stay.[1] The District Director denied his application for an extension because it was untimely.[2]

In April 1980, the Immigration and Naturalization Service (INS) initiated deportation proceedings against Tooloee, charging that he was deportable under 8 U.S.C. § 1251(a)(2)[3] as an alien who violated the

---

sixty days *prior to* expiration of the currently authorized stay. Tooloee was authorized to remain until September 17, 1979. The latest date on which he could properly file an application for extension was September 2, 1979. He did not file his application until November 28, 1979. Thus, his application was over two months late.

3. 8 U.S.C. § 1251 provides in part:
    (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
    . . . .
    (2) . . . is in the United States in violation of this chapter or in violation of any other law of the United States.

immigration laws by staying longer than permitted. At the May 1980 deportation hearing, Tooloee admitted that he had overstayed his authorization, but argued that the District Director should have excused the late filing under 8 C.F.R. § 214.1(c) and granted an extension of stay.[4] Tooloee offered to show that the Foreign Student Office at Stanford advised him that late applications for extensions were routinely granted and that the District Director did in fact grant late extensions. Tooloee also argued that the technicality of his late filing for an extension should not have rendered him deportable because he was otherwise in compliance with the conditions of his student status.

The immigration judge refused to re-examine the District Director's decision denying Tooloee an extension, holding that an immigration judge is without authority to review such a decision. The BIA dismissed Tooloee's appeal in a decision dated March 17, 1981, ruling that a decision on an application for extension of stay is solely within the District Director's discretion and not reviewable by either the immigration judge or the BIA.

On this appeal, Tooloee contends (1) that the immigration judge and the BIA were wrong in holding that they had no jurisdiction to review the discretionary decision of the District Director denying Tooloee an extension; (2) that on an appeal from the BIA, this court has jurisdiction to review the discretionary decision of the District Director denying the extension; (3) that the District Director abused his discretion by not excusing the late filing and denying the application for an extension of stay; and (4) that he is not deportable because he is in substantial compliance with the regulations governing nonimmigrant student status. We deal with Tooloee's contentions in order.

## II

■ Tooloee first contends that the immigration judge and the BIA had jurisdic-

tion to review the District Director's decision denying the application for an extension of stay. Relying on a regulation providing that there is no appeal from a District Director's refusal to grant an extension of stay,[5] both the immigration judge and the BIA refused to review the District Director's decision to deny Tooloee's application for an extension. Both refused to consider Tooloee's proffered evidence that (1) he had been told by the Foreign Student Office at Stanford that late applications for extensions of stay were routinely granted and (2) late applications were in fact routinely granted. We hold that the immigration judge and the BIA, in refusing to review the District Director's decision, correctly interpreted their jurisdictional regulations.

In *Ghorbani v. Immigration & Naturalization Service,* 686 F.2d 784, 791 (9th Cir. 1982), we upheld refusals by an immigration judge and the BIA to review a District Director's discretionary decision not to reinstate nonimmigrant student status. Noting the deference due an agency's construction of its own regulations, we concluded that the immigration law judge's and the BIA's interpretation of their jurisdictional regulations was not unreasonable.

Here, 8 C.F.R. § 214.1(c) provides that there shall be no appeal from the District Director's decision granting or denying an application for an extension of stay. As was the case in *Ghorbani,* we are unable to say that the immigration judge and the BIA were unreasonable in concluding that they had no jurisdiction to re-examine the District Director's decision.

## III

■ Tooloee next contends that this court may re-examine the District Director's decision on an appeal from the BIA. That issue was also decided against him in *Ghorbani.* As noted in *Ghorbani,* a circuit

---

**4.** 8 C.F.R. § 214.1(c) states in relevant part: "If failure to file a timely application is found to be excusable, an extension of stay may be granted . . . ."

**5.** 8 C.F.R. § 214.1(c) provides in part: "[An application for extension of stay] may be granted or denied by the district director or officer in charge. There shall be no appeal from his/her decision."

court of appeals' jurisdiction to review the decision of a District Director is based solely on section 106(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1105a(a). *Ghorbani,* 686 F.2d at 787. Section 106(a) allows the courts of appeals to review "'all final orders of deportation ... made ... pursuant to administrative proceedings under [8 U.S.C.] section 1252(b) [section 242(b) of the Immigration and Nationality Act] ....'" 686 F.2d at 787. Even though the District Director's decision denying Tooloee an extension of stay led to his § 242(b) deportation hearing, and ultimately to his being held deportable, the decision was not a final order of deportation made pursuant to a § 242(b) proceeding.

Some cases have referred to a nebulous "pendent jurisdiction" over denials of discretionary relief where the court of appeals is considering an appeal from a § 242(b) proceeding. *See, e.g., Cheng Fan Kwok v. Immigration & Naturalization Service,* 392 U.S. 206, 216 n. 16, 88 S.Ct. 1970, 1976 n. 16, 20 L.Ed.2d 1037 (1968); *Chadha v. Immigration & Naturalization Service,* 634 F.2d 408, 412 (9th Cir.1980), *aff'd,* — U.S. —, 103 S.Ct. 2764, 2777–78, 77 L.Ed.2d 317 (1983). In *Chadha,* we said, and the Supreme Court later agreed, that the term "final orders" in § 106(a) "includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing." 634 F.2d at 412.

As we pointed out in *Ghorbani,* however, there are only two classes of cases in which the Ninth Circuit has exercised "pendent" jurisdiction and reviewed matters not directly decided in the § 242(b) deportation proceedings: "when there has been a factual hearing on the issue, equivalent to that required by section 242(b), or where such a hearing is unnecessary." *Ghorbani,* 686 F.2d at 790. In *Chadha,* for example, there was no factual hearing, but there was no need for one because only a legal issue was involved. *Id.* In this case, however, there has been no factual hearing and there definitely is a need for such hearing. Thus, this is not an appropriate case for us to review a District Director's decision unsupported by

a factual record on an appeal from a § 242(b) proceeding.

The circumstances of the instant case are very similar to the circumstances presented in *Ghorbani.* There, Ghorbani contended that normally the District Director would have reinstated his nonimmigrant student status by retroactively approving his transferring schools and his finding employment. Ghorbani argued that the only reason the District Director denied reinstatement was the then-current sentiment against Iranian students arising out of the hostage crisis. 686 F.2d at 791. Our opinion noted that Ghorbani sought to introduce facts supporting his contentions at the deportation hearing, but that the immigration judge refused to consider the evidence on the ground that he had no authority to review the discretionary decision of the District Director. The BIA affirmed, also refusing to hear evidence on Ghorbani's charges. We concluded that we simply could not properly review Ghorbani's contentions on appeal absent a factual record.

In this case, Tooloee contends that he was told by the Foreign Students Office at Stanford that late applications for extension were routinely granted. He also offered to prove that late applications were in fact normally granted. Both the immigration judge and the BIA refused to consider these contentions. No factual record was produced at the proceedings below. As was the case in *Ghorbani,* we are convinced that we also lack jurisdiction to review the District Director's recordless decision.

Tooloee argues that if neither the immigration judge, the BIA nor this court can review the District Director's decision, he will be denied due process of law. A forum is available, however, and due process is satisfied. As we said in *Ghorbani,* "Such relief as may be available to [the foreign student] on this issue must originate with the district court." 686 F.2d at 791 (footnote omitted). We conclude that Tooloee must bring an original action in the district court to litigate the contention that the District Director abused his discretion in refusing Tooloee's application for an exten-

sion of stay. In *Ghorbani* we observed that administrative actions of the District Director are reviewable in the district courts by declaratory judgment actions, by habeas corpus proceedings, and by requests for injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702 (1982), or under 8 U.S.C. § 1329 (1982).[6] *Ghorbani,* 686 F.2d at 791 n. 16. Because the District Director's decision is reviewable—albeit in a different forum—Tooloee was not denied due process of law.

### IV

Because we hold that at this point we have no jurisdiction to re-examine the District Director's decision, we do not reach Tooloee's third contention—that the District Director should have excused the late filing and granted an extension of stay. That question will be resolved by the district court if Tooloee chooses to begin an original proceeding there.

### V

■ Tooloee also argues that he is not deportable because he was in substantial compliance with the detailed regulations governing student status. *See* 8 C.F.R. § 214.2(f). In *Ghajar v. Immigration & Naturalization Service,* 652 F.2d 1347, 1348 (9th Cir.1981) (per curiam), however, this court held that substantial compliance with the requirements for student status under 8 C.F.R. § 214.2(f) will not excuse failure to obtain an extension of stay. Thus, Tooloee's compliance with the regulations on student status is irrelevant if he failed to substantially comply with the regulations regarding extensions of stay.

Tooloee admits he filed for an extension of stay two months late. His two-month delay in filing caused the District Director to deny Tooloee's application for an extension and, because of this denial, Tooloee was later found deportable as an overstay. Too-

loee argues that his filing for an extension two months late should be considered substantial compliance with the regulations governing the extension of a stay and, thus, he should not have been found deportable.

Tooloee bases his argument on *Mashi v. Immigration & Naturalization Service,* 585 F.2d 1309 (5th Cir.1978). In *Mashi,* the Fifth Circuit blocked the deportation of an Iranian student who had taken less than the twelve credit hours required by I & NS regulations. Although the court's main holding[7] was that the twelve credit unit requirement did not apply to Mashi, the court noted that a de minimis violation of student status does not warrant the drastic consequence of deportation. The Fifth Circuit embraced a balancing test first developed by the BIA in *Matter of Neely and Whylie,* 11 I. & N.Dec. 864, 865 (BIA 1966). The Fifth Circuit said:

> We are confident that in the future the INS will continue to apply the test it adopted in *Neely*—looking into each case on its own facts, and deciding by striking a fair balance between the character of the act committed and the consequences which will flow from it.

585 F.2d at 1317.

In *Ghorbani,* we left open the question "whether there could be circumstances when a violation [of immigration regulations] would be so technical as not to justify deportation." 686 F.2d at 786. There, we found that Ghorbani had violated two "specific and significant" regulations relating to nonimmigrant student status—Ghorbani transferred to a different college without INS approval and became employed without INS approval. We decided that the violations were not "technical or insubstantial violation[s]." *Id.* We did not, however, delineate in *Ghorbani* exactly what kinds of violations would be deemed technical.

**6.** *See, e.g., Shamsian v. Ilchert,* 534 F.Supp. 178 (N.D.Cal.1982) (Iranian students' declaratory relief action challenging District Director's discretionary denials of extensions of stay); *Akbari v. Godshall,* 524 F.Supp. 635 (D.Colo.1981) (action for declaratory injunction and mandamus relief challenging District Director's dis-

cretionary denials of extensions of stay on equal protection grounds).

**7.** The substantial compliance test set forth in *Mashi* was identified as dicta in *Ghorbani v. Immigration & Naturalization Service,* 686 F.2d 784, 786 (9th Cir.1982).

In this case, Tooloee's filing for an extension of stay two months past the deadline might well be a violation so technical in character as not to justify deportation. We cannot decide the issue because the record before us is inadequate.[8] The record's inadequacy results from INS jurisdictional regulations explained in Parts II and III above. Moreover, the issue whether Tooloee's two-month delay in filing for an extension is "technical" is inextricably intertwined with the issue whether the District Director abused his discretion in denying an extension. Because these two issues are so interrelated, the district court should decide both issues in the first instance.

In resolving the issue whether Tooloee's two-month delay was a technical violation, it would seem appropriate for a district court to employ a balancing test such as the one set forth in *Mashi v. Immigration & Naturalization Service,* 585 F.2d at 1317 (quoting *Matter of Neely and Whylie,* (11 I. & N.Dec. 864, 865 (BIA 1966)). A district court should look at each case on its own facts and determine whether the character of the violation, when balanced against the consequence of deportation, is so technical as not to justify deportation. *See Ghorbani v. Immigration & Naturalization Service,* 686 F.2d at 786; *Ghajar v. Immigration & Naturalization Service,* 652 F.2d 1347, 1348 (9th Cir.1981) (per curiam) (implicitly approving the *Mashi* test which balances the character of the violation against the consequences of deportation).

AFFIRMED.

---

**8.** For example, we cannot tell from the record before us how the INS commonly dealt with late applications. Nor can we tell what advice was dispensed by the Foreign Students Office about the necessity of filing on time. And there may be other factors developed at a hearing which may be relevant to determining the character of the violation.