**Abdolreza SHAHLA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 81–7613.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 2, 1984.[*]

Decided Dec. 11, 1984.

Sneed, Circuit Judge, filed an opinion concurring in part and dissenting in part.

---

[*] The panel finds this case appropriate for submission without argument pursuant to Ninth Cir.R. 3(f) and Fed.R.App.P. 34(b).

562

Farcisco J. Barba, San Francisco, Cal., for petitioner.

Joseph Ciolino, Rose Collantes, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before SNEED, HUG, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Petitioner, Abdolreza Shahla, is a 28 year old native and citizen of Iran. Shahla entered the United States on November 22, 1976, as a nonimmigrant student destined for Donnelly College in Kansas City, Kansas. The Immigration and Naturalization Service ("INS") subsequently granted him an extension of stay until November 21, 1979.

On September 25, 1978, the INS authorized Shahla to transfer to the University of San Francisco where he planned to study business administration. Then, in September 1979, Shahla enrolled in the Academy of Art College in San Francisco to study advertising/graphics. Shahla did not apply to the INS for permission to transfer to the Academy of Art College until some time in November 1979. On November 20, 1979, the District Director denied Shahla's request for transfer and refused to grant him any further extension of stay. In April 1980, Shahla submitted a request for reinstatement to the District Director. The request was denied because of the hostage crisis then existing between the United States and Iran.

An Order to Show Cause was issued on February 23, 1981, charging Shahla with remaining in the United States beyond the date of his extension in violation of section 241(a)(2) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1251(a)(2) (1976). The immigration judge found Shahla deportable as an overstay and granted him fifteen days to depart the country voluntarily. The Board of Immigration Appeals dismissed Shahla's appeal, and he appealed to this court. We affirm.

First, Shahla argues that the INS abused its discretion (1) by requiring him to secure permission to transfer from the University of San Francisco to the Academy of Art College; and (2) by going forward with the deportation process. Because these alleged abuses of discretion did not arise in a deportation hearing under section 242(b) of the Act, 8 U.S.C. § 1252(b) (1982), this court lacks jurisdiction to review them. *Ghorbani v. INS*, 686 F.2d 784 (9th Cir. 1982).

Section 106(a) of the Act, 8 U.S.C. § 1105a(a) (1982), allows courts of appeal to review "all final orders of deportation ... made ... pursuant to administrative proceedings under section 1252(b) of this title ...." The term "final orders" in § 106(a) includes "all matters on which the validity of the final order is contingent." *Chadha v. INS*, 634 F.2d 408, 412 (9th Cir.1980), *aff'd*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). We have declined to exercise "pendent" jurisdiction over claims nearly identical to those raised by Shahla where—as is the case here—no

factual hearing on the claims had been held. *See Tooloee v. INS*, 722 F.2d 1434 (9th Cir.1983) (allegation that District Director abused his discretion in denying an Iranian an extension of stay); *Ghorbani*, 686 F.2d at 791 (allegation that District Director denied reinstatement of student status because of anti-Iranian sentiment arising out of the hostage crisis). Shahla must raise his claims in the first instance in district court. *See Mohammadi-Motlagh v. INS*, 727 F.2d 1450, 1452–53 (9th Cir. 1984); *Tooloee*, 722 F.2d at 1437–38.

■ Second, Shahla contends that the immigration judge abused his discretion in finding Shahla deportable. To deport an overstay, the INS must convince the immigration judge by clear and convincing evidence that the alien was admitted as a nonimmigrant for a specific period, that the period has elapsed, and that the alien is still in this country. *Shoaee v. INS*, 704 F.2d 1079, 1082 (9th Cir.1983). Shahla's admissions that he was authorized to remain in the United States until November 21, 1979, and that he has not departed the United States, are clear and convincing evidence of deportability.

■ Third, Shahla contends that the amendment to 8 C.F.R. § 244.1 (1981), which limited to fifteen days the time an Iranian national could be granted for voluntary departure, is invalid because (1) the Commissioner of the INS lacked the authority to promulgate the amendment and (2) the amendment conflicted with a treaty between the United States and Iran.[1] These contentions are moot. As a practical matter, Shahla has spent more time in the United States than he could reasonably have expected to receive from the immigration judge had the judge not been bound by the fifteen day limitation. Shahla's appeal has tolled his voluntary departure period for over three years. Moreover, the fifteen day period will start to run on the date our mandate is issued, and Shahla is not precluded from asking the District Director to exercise his power to extend the voluntary departure period. *See* 8 C.F.R. § 244.2 (1984).[2]

■ Fourth, Shahla contends he was denied equal protection of the laws because the INS rendered every "immigration benefit" to pro-Shah Iranians while denying relief from deportation to apolitical Iranians such as himself. This argument fails because Shahla has not produced any evidence that the INS distinguished between pro-Shah and apolitical Iranians. *Cf. Ghajar v. INS*, 652 F.2d 1347, 1349 (9th Cir. 1981) (per curiam).

■ Fifth, Shahla argues that measures affecting the discretion and job security of immigration judges prevented them from affording Iranians fair and impartial hearings. Shahla's contention lacks merit. Shahla freely admitted facts necessary to support the immigration judge's finding of deportability; therefore, the measures Shahla complains of did not affect the outcome of his hearing.

---

1. The amendment to § 244.1 has been repealed. *See* 46 Fed.Reg. 25,597, 25,598 (1981). This court, however, has held that the repeal of the Iranian regulations was prospective only. *Shoaee v. INS*, 704 F.2d 1079, 1083 (9th Cir. 1983).

2. If Shahla's treaty argument were not moot, it would be fit for judicial resolution. We agree with Judge Sneed that the judicial branch must show deference to the political branches of government in foreign policy matters. Nevertheless, we believe that the judicial branch may examine whether the political branches have used a foreign policy crisis as an excuse for treating aliens arbitrarily.

The Amity Treaty between the United States and Iran permits the United States to do only what is *necessary* to restore international peace and security. *See* concurring and dissenting opinion *post*, at 564. Unlike Judge Sneed, we would require, at the very least, that the government attest that it considered its § 244.1 limit on the voluntary departure time for Iranian deportees as necessary to secure the release of the American hostages. *See Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C.Cir.1979) (upholding the constitutionality of an Iranian regulation (8 C.F.R. § 214.5 (1980)) where the attorney general attested that the regulation was a "fundamental element in the President's efforts to resolve the Iranian crisis and to maintain the safety of American hostages in Tehran"). Our reference to *Narenji* does not signal our approval or disapproval of the holding in that case.

In view of the lapse of time and changed circumstances, it may be appropriate for petitioner to reapply to the District Director for reinstatement of status. This will allow the District Director an opportunity to reevaluate the equities of petitioner's application without the inhibition of 8 C.F.R. § 248.2 (1981).[3] *See Torabpour v. INS*, 694 F.2d 1119, 1122–23 (8th Cir.1982). The mandate shall issue forty-five days from the entry of this judgment, to enable petitioner to seek such relief and to move for a stay of deportation.

AFFIRMED.

SNEED, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I, II, IV and V of the majority opinion but not in Part III. We should decide the validity of the voluntary departure amendment. The issue is not moot.

Shahla contends that the amendment is invalid first, because the Commissioner did not possess the proper authority to promulgate it, and second because it conflicts with the Amity Treaty in force between the United States and Iran. To survive an attack alleging mootness, a suit must be a real and substantial controversy admitting of specific relief. *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *Bumpus v. Clark*, 702 F.2d 826 (9th Cir.1983). In this case, if the challenged amendment were to be invalidated, the immigration judge's order granting voluntary departure in lieu of an order of deportation would necessarily be void. At that point this court undoubtedly would fashion a remedy that would include a remand for redetermination of deportability as well as eligibility for voluntary departure based on current conditions. I cannot imagine this court refusing to provide such a remedy were it to accept the substance of the petitioner's constitutional arguments.

The controversy is therefore real, and the petitioner has a remedy available to him. Therefore, I shall now turn to the merits of his attacks on the regulation.

Shahla first contends that the Commissioner was without authority to promulgate the amendment to 8 C.F.R. § 244.1 (1981), which limited to 15 days the amount of time that could be granted to Iranians for voluntary departure. In support of this position, he characterizes the amendment as an act of foreign policy executed without the authority of the President. However, arguments based on presidential delegation are irrelevant. In section 244(e) of the Act, 8 U.S.C. § 1254(e), Congress gave the Attorney General the power to grant discretionary relief in the nature of voluntary departure. The Attorney General, in turn, delegated to the Commissioner of the INS broad authority to enforce the immigration and naturalization laws and to issue regulations deemed necessary and appropriate for the exercise of that authority. 8 C.F.R. § 2.1 (1981). The Commissioner thus had the authority to promulgate the amendment. *Nademi v. INS*, 679 F.2d 811, 813–14 (10th Cir.), *cert. denied*, 459 U.S. 872, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982). *See also Shoaee v. INS*, 704 F.2d 1079, 1083 (9th Cir.1983).

Shahla's second contention, that the amendment is invalid as conflicting with the Amity Treaty in force between Iran and the United States,[1] presents a more difficult issue. Shahla maintains that this treaty prevents the United States from discriminating against Iranian nationals in this country. He refers to Article IV(1) of the Treaty in which both countries promise to "refrain from applying unreasonable or discriminatory measures that would impair [the] legally acquired rights and interests" of the other country's nationals. Shahla overlooks, however, Article XX, which provides in part that "[t]he present Treaty

---

3. 8 C.F.R. § 248.2 was amended on April 16, 1980, to restrict severely the eligibility of Iranian nationals for changes of nonimmigrant classification. 45 Fed.Reg. 26,015. The amendment was repealed on May 8, 1981. 46 Fed.Reg. 25,598.

1. Treaty of Amity, Economic Relations, and Consular Rights Between the United States and Iran, August 15, 1955, (entered into force June 16, 1957), 8 U.S.T. 899, T.I.A.S. No. 3853.

shall not preclude the application of measures ... (d) necessary to fill the obligations of a [party] for the maintenance or restoration of international peace and security, or necessary to protect its essential security interests." To apply Article XX, however, would require a determination whether issuance of the amendment to 8 C.F.R. § 244.1 (1981) was a "necessary" response to the Iranian hostage crisis. This is a question not within the province of a court to decide. As the Supreme Court said in *Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976), "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.... [D]ecisions in these matters ... [are] more appropriate to either the Legislature or the Executive than to the Judiciary." This is a proper application of the doctrine of separation of powers. The judiciary cannot sensibly formulate foreign policy. This is the province of the political branches of our government. To extend relief to the petitioner based upon the Amity Treaty would be an improper exercise of judicial power.

For these reasons, I respectfully dissent to part III.