**Moshe GOTTESMAN, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–2442.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1994.

Decided Aug. 31, 1994.

**ARGUED:** Ira Jay Kurzban, Kurzban, Kurzban & Weinger, P.A., Miami, FL, for petitioner. Ellen Sue Shapiro, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent. **ON BRIEF:** Edward Copeland, New York City, for petitioner. Frank W. Hunger, Asst. Atty. Gen., David J. Kline, Asst. Director, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before WILKINSON and LUTTIG, Circuit Judges, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.

Petition for review denied by published opinion. Judge WILKINSON wrote the opinion, in which Judge LUTTIG and District Judge TRAXLER joined.

## OPINION

WILKINSON, Circuit Judge:

Petitioner in this case challenges both the denial of relief from a deportation order issued by the Board of Immigration Appeals ("BIA"), and a related rescission order issued by the district director of the Immigration and Naturalization Service ("INS"). Be-

cause this court lacks jurisdiction to review the INS rescission order, we do not address the merits of petitioner's claims regarding that order. With respect to the deportation order, we find that the BIA did not abuse its discretion in refusing to terminate the deportation proceedings or in denying petitioner relief from deportation. Accordingly, we deny the petition for review and affirm the decision of the BIA.

## I.

Petitioner Moshe Gottesman is a citizen of Israel who entered the United States in July 1983. At that time, Gottesman was admitted as a nonimmigrant visitor authorized to remain in the country for six months. In August 1984, Gottesman married Tammie Holland, a United States citizen residing in New York City. Approximately two months later, Ms. Holland filed an immediate relative visa petition on behalf of Gottesman. On January 8, 1985, the petition was approved, and Gottesman's status was adjusted to that of a permanent resident.

Within a few months of obtaining permanent resident status, Gottesman relocated to Myrtle Beach, South Carolina. Ms. Holland did not move with Gottesman, and the two lost contact with each other in April or May of 1985. In November 1986, Gottesman filed for divorce.

On March 19, 1987, Gottesman met with two special agents of the IRS and informed them that he married Ms. Holland for the sole purpose of obtaining lawful permanent resident status in the United States. He repeated these admissions to the IRS agents on April 4, 1987, and again to an INS agent on April 18, 1987. Gottesman now claims that these admissions were false and were made solely to placate his then-girlfriend, Diane Lor, whose family considered it a disgrace for her to be involved with a previously married man. In any event, Gottesman broke up with Lor later in 1987.

On October 16, 1989, Gottesman met with INS Agent George Glass in Charlotte, North Carolina. At that meeting, Agent Glass served Gottesman with a letter indicating the Service's intention to rescind Gottesman's permanent resident status. The letter stated:

> You are advised that within 30 (thirty) days of the date of this notice you may file an answer, in writing and made under oath, setting forth the reasons why your adjustment of status should not be rescinded. You may also, in support of or in lieu of a written answer and within 30 (thirty) days of this notice, request a hearing before an immigration judge.... Failure to comply with the foregoing will result in the rescission of the lawful permanent resident status granted to you on January 8, 1985.

At the meeting, Gottesman signed a statement acknowledging receipt of the notice of intent letter. Four days later, the INS mailed the notice of intent letter to Gottesman.

On November 16, 1989, thirty-one days after Gottesman's meeting with Agent Glass, the INS issued a notice of rescission of Gottesman's lawful permanent resident status. The notice explained that Gottesman was not eligible for permanent resident status because his marriage to Ms. Holland was fraudulent. The notice further stated that the rescission of Gottesman's status was necessitated by his failure to request a hearing within the allotted time. On the same day the notice of rescission was issued, the INS received Gottesman's response to its notice of intent letter. The response included a denial of the allegations in the notice of intent, an affidavit stating that the marriage to Ms. Holland was not fraudulent, and a request for a hearing pursuant to 8 C.F.R. § 246.3. The INS did not grant that hearing, however, and subsequently issued an order charging Gottesman with deportability under § 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), which requires the deportation of nonimmigrants remaining in the country beyond their authorized stay.[1]

---

1. Section 1251 was substantially revised in 1990, at which time the twenty categories of excludable aliens were consolidated into five broader classes. *See* Immigration Act of 1990, Pub.L. No. 101–649, § 602(a), 104 Stat. 4978, 5077–82 (1990). Accordingly, the statutory section referred to in the text has been changed. The 1990 revision has no effect on the issues before us.

On November 22, 1989, Gottesman filed a motion to reopen the rescission proceedings and to reconsider the rescission of his permanent resident status. In the motion, Gottesman maintained that his late filing was "inadvertent and unintentional," and asked that his request for a hearing be considered timely. On December 11, 1989, the INS district director denied the request to allow the late filing. Nonetheless, the district director went on to consider Gottesman's affidavit and response letter, and concluded that Gottesman's current claim that his marriage was legitimate lacked credibility. Accordingly, the district director dismissed Gottesman's motion to reopen the rescission proceedings.

Gottesman's deportation hearing before an immigration judge commenced more than one year later, on June 27, 1990. Two days before the hearing was to begin, Gottesman filed a second motion to reopen the rescission proceedings with the district director of the INS. In that motion, Gottesman argued for the first time that he had orally requested a rescission hearing during his October 1989 meeting with Agent Glass. At the start of the deportation hearing, Gottesman moved to terminate the deportation proceedings on the ground that his second motion to reopen the rescission proceedings was then pending before the INS district director. Gottesman also sought voluntary departure as relief from deportation.

After a full hearing, the immigration judge issued an order denying Gottesman's request for termination of the deportation proceedings and rejecting his application for voluntary departure as a matter of discretion. The judge ordered that Gottesman be deported from the United States to Israel. Gottesman appealed the judge's decision to the Board of Immigration Appeals, seeking termination of the deportation proceedings or, in the alternative, reversal of the deportation order. Gottesman also sought suspension of deportation or voluntary departure. In an order of October 13, 1993, the BIA affirmed the immigration judge's refusal to terminate deportation proceedings. The BIA also upheld the immigration judge's denial of voluntary departure. Finally, the BIA concluded that Gottesman failed to qualify for suspension of deportation based on his inability to establish good moral character.

Gottesman now appeals. We address his various claims in turn.

## II.

■ Petitioner first challenges the INS district director's decision rescinding his status as a lawful permanent resident in the United States. Gottesman raises a number of challenges to the district director's order, and maintains that the order was issued in violation of INS regulations. Because we lack jurisdiction to review the INS rescission order, however, we are not in a position to consider these arguments.

Section 1105a(a) of the Immigration and Nationality Act ("INA") limits appellate court review of immigration proceedings to "final orders of deportation ... made against aliens within the United States." 8 U.S.C. § 1105a(a); see also Young v. United States Dep't of Justice, INS, 759 F.2d 450, 457 (5th Cir.1985). This carefully circumscribed jurisdictional grant does not allow federal circuit courts to review orders that are merely preliminary to, or associated with, a final order of deportation. See Cheng Fan Kwok v. INS, 392 U.S. 206, 215, 88 S.Ct. 1970, 1975–76, 20 L.Ed.2d 1037 (1968). It is true, of course, that in reviewing final decisions of district courts, courts of appeals ordinarily review rulings that are preliminary to the final judgment. The difference between our scope of review over district court appeals and deportation appeals owes to the different language that Congress used in conferring the different jurisdictional grants. The language "final orders of deportation" is more restrictive, for example, than the language "final decisions of the district court[ ]" found in 28 U.S.C. § 1291. The language in § 1291 is simply intended to distinguish "final" decisions from merely interlocutory ones, whereas the language in § 1105a(a) is meant to distinguish a particular species of order from other kinds of orders which may have preceded it. It is significant that Congress did not use a broader term, such as "final decision of the Attorney General," in crafting § 1105a(a). Accordingly, the decision of an INS district director to rescind the adjust-

ment of an individual's residency status is not reviewable in a court of appeals. *See Bachelier v. INS,* 548 F.2d 1157, 1158 (5th Cir. 1977) (holding that rescission proceedings "are not 'final orders of deportation' as specified by the statute providing for direct review"). *But see Bachelier v. INS,* 625 F.2d 902, 904 (9th Cir.1980) (reaching opposite conclusion).

This conclusion is not affected by the Supreme Court's decision in *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In that case, an alien residing in the United States was granted suspension of deportation by an immigration judge, only to have that suspension vetoed by the House of Representatives. *See id.* at 926–28, 103 S.Ct. at 2771–72. The Court there held that a court of appeals had jurisdiction under 8 U.S.C.§ 1105a(a) to review the constitutionality of the provision in the INA allowing either house of Congress to veto the Attorney General's suspension of deportation. *See id.* at 937–39, 103 S.Ct. at 2777–78. As the Court noted, Chadha's action "directly attack[ed] the deportation order itself, and the relief he [sought by challenging the House veto]—cancellation of deportation—[was] plainly inconsistent with the deportation order." *Id.* at 939, 103 S.Ct. at 2778. Unlike the petitioner in *Chadha,* Gottesman challenges an order issued by the INS that is clearly distinct from, and preliminary to, the BIA's deportation order. In suggesting that we look beyond the deportation hearing and review the decision of a separate agency that serves as a backdrop to the deportation proceedings,[2] Gottesman is asking this court to step far beyond the review permitted us by *Chadha.* We believe that 8 U.S.C. § 1105a(a) does not permit us to take such a step.

Cases decided subsequent to *Chadha* support this view. Courts have repeatedly held that decisions related to a final order of deportation, but not part and parcel of the deportation order itself, are not subject to review under 8 U.S.C. § 1105a(a). *See, e.g., Young,* 759 F.2d at 457 (holding that BIA refusals to reopen bond determinations are not reviewable under § 1105a(a)); *Fatehi v. INS,* 729 F.2d 1086, 1088 (6th Cir.1984) (holding that INS district directors' decisions denying visa extensions are not reviewable under§ 1105a(a)); *Ghaelian v. INS,* 717 F.2d 950, 952 (6th Cir.1983) (holding that § 1105a(a) does not grant jurisdiction to review constitutionality of INS regulations that are not central to the deportation decision). Courts of appeals have recognized this significant limitation on their jurisdiction even in cases where the challenged decision had a substantial impact on the deportation proceedings. For example, the Tenth Circuit has refused to review an INS district director's denial of employment authorization, even though the petitioner would not have been deportable had the district director granted the requested authorization. *See Olaniyan v. District Director, INS,* 796 F.2d 373, 375–76 (10th Cir.1986). Similarly, the Ninth Circuit found that it lacked jurisdiction to review a district director's decision denying an extension of stay, even though that decision ultimately led to petitioner's being held deportable, because the decision was not a "final order of deportation." *Tooloee v. INS,* 722 F.2d 1434, 1437 (9th Cir.1983); *see also Mohammadi–Motlagh v. INS,* 727 F.2d 1450, 1452 (9th Cir.1984) (explaining that "*Chadha* ... does not signify that the Court has retreated from the narrow construction of section 1105a(a) adopted in *Cheng Fan Kwok v. INS.*"). As these cases make clear, decisions such as the rescission order issued by the INS do not constitute "final orders of deportation" within the meaning of section 1105a(a) and they are thus not reviewable in the courts of appeals.

■ Even if section 1105a(a) did permit this court to exercise jurisdiction over the INS rescission order, Gottesman has failed to properly present the issue of that order's validity to this court. Fed.R.App.Proc. 15(a),

---

2. The BIA and the INS, although both under the authority of the Attorney General, are distinct agencies. Unlike the INS, the BIA is in the Department of Justice's Executive Office for Immigration Review. *See* 8 C.F.R. §§ 3.1–3.8. In addition, the BIA "is not bound by the Operations Instructions of the Immigration and Naturalization Service" and its responsibilities are "divorced from the [INS'] enforcement apparatus." Charles Gordon & Stanley Mailman, *Immigration Law and Procedure* § 3.05[2], at 3–43 (1993).

which governs the review of agency orders, states that "[t]he petition ... must designate ... the order or part thereof to be reviewed." Gottesman's petition for review, however, identifies only the BIA's October 13, 1993, order as the subject of this appeal and omits any mention of the rescission order. By failing to designate the INS order in his petition, Gottesman has deprived this court of any jurisdiction which it may have had to review that order.

In recognizing our lack of jurisdiction based on Gottesman's incomplete petition for review, we do not disturb the well-established principle that "the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988) (quoting *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Rather, we give effect to a jurisdictional requirement stated in Rule 15(a) that went wholly unsatisfied. Such requirements may not be waived, even though courts are encouraged to construe the rules liberally. *See id.* at 317, 108 S.Ct. at 2409.

Petitioner attempts to skirt Rule 15(a)'s requirements by relying on the Supreme Court's decision in *Foman.* In *Foman,* the petitioner appealed both the final judgment of the district court and the court's subsequent denial of her motion to vacate that judgment. *See Foman,* 371 U.S. at 179, 83 S.Ct. at 228–29. The court of appeals dismissed the first notice of appeal as premature because it was filed while the motion to vacate was pending. *See id.* at 180, 83 S.Ct. at 229. The court of appeals further held that the second notice of appeal was ineffective to challenge the district court's primary judgment because it concerned only the district court's denial of the motion to vacate. *See id.* The Supreme Court reversed the court of appeals' cramped reading of the rules. *See id.* at 181, 83 S.Ct. at 229. The court of appeals had two notices of appeal before it, and it was clear that the petitioner intended to challenge the district court's substantive decision. *See id.*

The case before us is completely dissimilar. Unlike the petitioner in *Foman,* Gottesman never presented this court with a petition for review identifying the INS district director's decision as a basis for his appeal. Gottesman submitted a single petition for review that designated only the BIA's order. Furthermore, the two notices of appeal in *Foman* challenged two determinations by the same court that were separated by the lapse of only one month's time. *See id.* at 179, 83 S.Ct. at 228. Here, Gottesman claims that his petition for review, identifying only a BIA order issued on October 13, 1993, is sufficient to give this court jurisdiction over an INS decision released on November 16, 1989. That *Foman* does not compel this result is patently clear. Two decisions issued by separate agencies more than four years apart are hardly akin to two decisions issued by a single court over the course of one month. If the requirements of Rule 15(a) are to be given any effect, reliance on the principle of liberal application cannot save Gottesman from his defective petition for review.

### III.

■ Petitioner next challenges the BIA's decision not to terminate deportation proceedings while his second motion to reopen the rescission proceedings was pending before the INS district director. We review the BIA's decision not to terminate its proceedings under an abuse of discretion standard. *See Jiminez v. District Director, U.S. INS,* 441 F.2d 1149, 1150 (9th Cir.1971); *cf. Nazakat v. INS,* 981 F.2d 1146, 1148 (10th Cir.1992) (BIA's summary dismissal of appeal from an immigration judge is reviewed for abuse of discretion); *M.A. A26851062 v. U.S. INS,* 899 F.2d 304, 305 (4th Cir.1990) (en banc) (BIA's refusal to reopen deportation proceedings is reviewed under an abuse of discretion standard).

■ As an initial matter, we note that "[m]otions for reopening of immigration proceedings are disfavored." *INS v. Doherty,* 502 U.S. 314, ——, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992) (citing *INS v. Abudu,* 485 U.S. 94, 107–08, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988)). This is so because "every delay works to the advantage of the

deportable alien who wishes merely to remain in the United States." *Id.* at ——- ——-, 112 S.Ct. at 724–25. Furthermore, such motions are especially suspect when they are generated years after the challenged order was issued and only days before a further proceeding is scheduled to begin. Here, by waiting until October 1993 to file his second motion to reopen the November 1989 rescission proceedings, Gottesman attempted to maximize the delay of his deportation. In fact, the challenge asserted by Gottesman in his second motion to reopen— that he made an oral request for a hearing to INS Agent Glass—could have been raised when Gottesman submitted his first motion to reopen on November 22, 1989. Because the meeting with Agent Glass occurred before the INS district director issued the rescission order, there is no reason why Gottesman was unable to raise this challenge until four years after that order was issued.

In refusing to terminate deportation proceedings based on Gottesman's last ditch effort to attack the INS' rescission of his permanent resident status, the BIA gave effect to the policy discouraging piecemeal attacks on immigration orders. Were the BIA required to grant the requested termination, aliens facing potential deportation would, as a matter of course, file last minute challenges to underlying orders as a sure-fire way to prolong their stay in the United States. The BIA's sound exercise of its judgment in this matter cannot be said to constitute an abuse of discretion.[3]

## IV.

Finally, petitioner challenges the BIA's refusal to grant him relief from deportation in the form of voluntary departure or suspension from deportation. We address the two forms of relief in turn.

■ First, we note that the BIA's decision whether to grant voluntary departure is a matter within the agency's discretion. *See* 8 U.S.C. § 1254(e). We will uphold the BIA's discretion unless the Board exercised

it in an arbitrary and capricious manner. *See Cruz–Lopez v. INS,* 802 F.2d 1518, 1522–23 (4th Cir.1986); *Parcham v. INS,* 769 F.2d 1001, 1003 (4th Cir.1985). If the Attorney General decides as a discretionary matter that voluntary deportation should be denied, "[s]he need not consider whether the threshold statutory eligibility requirements [for such relief] are met." *INS v. Rios–Pineda,* 471 U.S. 444, 449, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985). We further note that "the burden of proof rests with the alien to establish that a favorable exercise of discretion is warranted." *See Parcham,* 769 F.2d at 1003. Given the tortuous history of this case, it is impossible to say that the BIA's conclusion reflects an abuse of discretion. It is indisputable that Gottesman either entered into a sham marriage to fraudulently obtain permanent resident status or repeatedly lied to government agents in stating that he did just that. Accordingly, petitioner's challenge to the BIA's denial of voluntary departure is without merit.

■ Similarly, Gottesman failed to satisfy the statutory requirements for suspension of deportation. Under 8 U.S.C. § 1254(a), a deportable alien must establish (1) that he has been a person of "good moral character" for at least seven years, (2) that he has been physically present in this country continuously during that period, and (3) that deportation would result in extreme hardship to him or an immediate family member who is an American or a lawful permanent resident of the United States. For reasons noted above, Gottesman has failed to satisfy the first element of the statutory test, and the Board's decision to deny him suspension from deportation was a proper exercise of its discretion. *See Rios–Pineda,* 471 U.S. at 444, 105 S.Ct. at 2098 (holding that abuse of discretion standard applies to denial of motion to reopen deportation proceedings for consideration of suspension of deportation).

## V.

For the foregoing reasons, the decision of Board of Immigration Appeals is affirmed,

---

**3.** We also note the BIA's determination that it lacked jurisdiction to review the district director's rescission order and thus that it was constrained to follow the rescission order as it existed at the time of the deportation hearing. *See Matter of Rodriguez–Esteban,* 7 ILPR B1–127 (BIA 1989) (I.D. # 3115).

and the petition for review of that decision is denied.

*PETITION FOR REVIEW DENIED.*